EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellant,

v.

GEAR PETROLEUM, INC.,
Defendant–Appellee.

No. 90–3024.

United States Court of Appeals,
Tenth Circuit.

Nov. 13, 1991.

Gwendolyn Young Reams, E.E.O.C., Washington, D.C. (Charles A. Shanor and Donald R. Livingston, with her on the brief) for plaintiff-appellant.

Alan L. Rupe, Grace & Rupe, Wichita, Kan., for defendant-appellee.

Before BALDOCK, BARRETT and EBEL, Circuit Judges.

EBEL, Circuit Judge.

This appeal involves an age discrimination claim brought by appellant Equal Employment Opportunity Commission ("EEOC") against Gear Petroleum Company, Inc. The EEOC contends that the district court committed prejudicial error in excluding factual evidence submitted by Gear during the EEOC's investigation and

conciliation of the discrimination charge. We affirm the district court.

## BACKGROUND

Donald Trowbridge was employed as an oil pumper by defendant Gear Petroleum. In 1986, following the collapse in the oil market, Gear fired Trowbridge, then aged 66, and retained a less-experienced man half his age. On October 14, 1986, Trowbridge filed a complaint with the Equal Employment Opportunity Commission, which subsequently commenced an investigation of Gear. From the date of filing until June of 1988, the EEOC exchanged telephone calls and letters with Gear's counsel, Martin Bauer, concerning Trowbridge's claim of age discrimination. During the course of this correspondence, Bauer wrote two letters to the EEOC stating that Trowbridge had been laid off not only because of a general reduction in force and dissatisfaction with Trowbridge's performance, but also because the company was "moving toward mandatory retirement at age 65." The letters asserted that such an age-based retirement policy was a bona fide occupational qualification and therefore was exempt under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

In March of 1988, the EEOC commenced this action in the District of Kansas, charging Gear with violating section 4(a)(1) of the ADEA. 29 U.S.C. § 623(a)(1). In its answer to the complaint, Gear denied the charge and asserted that Trowbridge was required to retire "due to a reduction in force and defendant's decision to retain a more qualified worker." Gear made no mention of a mandatory retirement plan, and Bauer, in a subsequent deposition, stated that he had been mistaken about the existence of such a plan.

Shortly before trial, Gear filed a motion *in limine* to exclude the two letters that Bauer sent to the EEOC. Gear argued that the letters comprised a part of the settlement and conciliation procedures required under the ADEA and as such were inadmissible as evidence. Gear additionally argued that Federal Rules of Evidence 403 and 408 were sufficient to keep the letters out of evidence. The EEOC sought the admission of these letters to demonstrate that Gear's defense was pretextual and that the dismissal had been motivated by Trowbridge's age. The district court granted defendant's motion and excluded the letters and any testimony about the letters. A two-day jury trial followed in which the jury returned a verdict in favor of Gear. The EEOC now appeals, arguing that the district court abused its discretion in excluding the Bauer letters.

## ANALYSIS

The ADEA, in contrast to section 706(b) of Title VII, contains no explicit provision for the exclusion of evidence obtained as a result of pretrial communications between parties. Gear asserts, however, that the section 706(b) exclusion of pretrial communications should be grafted onto the statutory provisions of the ADEA. Gear bases this argument on the fact that section 7(b) of the ADEA and section 706(b) of Title VII are similar. Section 7(b) of the ADEA provides that:

[b]efore instituting any action under this section, the Equal Employment Opportunity Commission shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion.

29 U.S.C. § 626(b). This provision is similar in many respects to the language of section 706(b) of Title VII, which states that:

[i]f the Commission determines ... that there is reasonable cause to believe that [a] charge [of unlawful employment practice] is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.

42 U.S.C. § 2000e–5(b). Unlike the ADEA, however, Title VII goes on to state that "[n]othing said or done during and as a part of such informal endeavors may be made public by the Commission ... or used

as evidence in a subsequent proceeding...." *Id.*

Gear cites *Olitsky v. Spencer Gifts, Inc.*, 842 F.2d 123 (5th Cir.), *cert. denied*, 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988), for the proposition that Title VII's exclusion of conciliation materials should be applied to ADEA cases. We reject that argument. In the first place, the *Olitsky* court accepted the application of section 706(b)'s exclusionary language to the ADEA only because that approach was not challenged by either party. Nevertheless, the court cautioned that "there may exist some doubt as to whether section 706(b) of Title VII has any application to an ADEA case. We do not address that issue because neither party has raised it." *Id.* at 126. Moreover, we find that although it is true that "the ADEA and Title VII share a common purpose, the elimination of discrimination in the workplace," *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979), the difference in language between the two statutes cannot be overlooked without rewriting the ADEA from the bench. There is little to suggest that Congress intended the ADEA to be governed by a sentence contained in Title VII. If that had been its purpose, one would expect that Congress would have inserted language to that effect. *See Binder v. Long Island Lighting Co.*, 933 F.2d 187, 193 (2d Cir.1991) ("Title VII contains an express provision barring the admissibility of statements made to the EEOC, whereas the ADEA contains no such provision. Congress enacted the ADEA in the wake of Title VII, and ... any omission in the text of the ADEA of a provision found in Title VII is likely to reflect a deliberate decision on Congress's part."). Thus, an interpretation based on the plain meaning of the statute suggests that Gear's "argument by analogy to Title VII [is] unavailing." *Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). *Accord Binder*, 933

F.2d at 193 ("assumption that Title VII's provision regarding the inadmissibility of statements before the EEOC applies to ADEA actions is unfounded").[1]

In the absence of such an explicit rule in the ADEA, the district court's decision to exclude the Bauer letters should be evaluated under the standard set forth in the Federal Rules of Evidence. As this court noted in *Blim v. Western Electric Co.*, 731 F.2d 1473, 1476 (10th Cir.) (per curiam), *cert. denied*, 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984), "[t]he admission of evidence is discretionary with the trial court and will not be disturbed on appeal unless clearly erroneous."

According to Rule 408 of the Federal Rules of Evidence:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. *Evidence of conduct or statements made in compromise negotiations is likewise not admissible....* (emphasis added)

In this case, the crucial inquiry involves whether the Bauer letters were part of compromise negotiations between the EEOC and Gear.

In opposing the motion *in limine*, the EEOC argued that its pretrial communications with Gear could be divided into two phases, the investigation phase and the conciliation phase. According to the EEOC, "compromise negotiations" do not begin until *after* the conclusion of the investigation stage, at which time the EEOC issues its determination letter. Since the Bauer letters preceded the issuance of the determination letter in this case, the EEOC asserted that the letters *were* admissible at trial. R.Vol. II at 27–29.[2] The district

---

1. *Olitsky* does have relevance, however, in suggesting that there is no magic line between the EEOC's investigative function and its conciliation and settlement function.

2. On appeal the EEOC takes a more flexible approach and acknowledges that conciliation can proceed simultaneously with investigation and that it need not necessarily require a determination letter first.

court rejected this argument and found that this communication between Gear's attorney and the Commission was simply "communication[ ] undertaken in the interest of persuading the defendant's cause and should not be relied upon before a jury in the trial of the issue as some admission made by the attorney in behalf of his company...." R.Vol. II at 25. Looking at the facts of this case, the district court reasoned that:

> call it what you want, it's clear to me that early on the attorney for the defendant, ... Mr. Bauer, undertook a course of action in communications with the commission. Whether it's conciliation or persuasion, it's clear to me his intent was to find some reasonable avenue for disposition.... [W]hat is important to me is that there was communication between the attorneys for the defendant and the commission undertaken in the interest of encouraging some form of reconciliation of this matter. If it is persuasion or conferencing or conciliation as such, it was undertaken in the interest of attempting to resolve the matter some way. Now, for my part, I commend that process, and I certainly don't look to a particular time frame when it's undertaken, but rather encourage it from the very beginning.

*Id.* at 24–25.[3]

We cannot say that the district court abused its discretion in determining that the Bauer letters were part of compromise negotiations and therefore were excludable. The ADEA statute explicitly directs the EEOC that *"[b]efore* instituting any action under this section" it should pursue "informal methods of conciliation, conference, and persuasion," 29 U.S.C. § 626(b) (emphasis added), and it makes no provision for a "preconciliation" investigation stage. Section 626(d) of the ADEA is even more emphatic, requiring that upon receiving a charge alleging unlawful discrimina-

tion "the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and *shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion."* (emphasis added).

We intend no per se rule in the context of an ADEA complaint. Each case must be judged on the basis of the particular record involved. Here, however, we cannot say that it was clearly erroneous for the district court to conclude that the communications between Bauer and the Commission were made in the context of compromise negotiations. We accordingly affirm the district court's exclusion of the Bauer letters as protected communications.

■ The EEOC finally argues that it should have been allowed to introduce the Bauer letters in order to impeach the testimony of certain Gear executives. Specifically, the EEOC sought to show that the executives conferred with Bauer in producing the letters and had knowledge of the information therein, thereby impeaching their testimony that there was no mandatory retirement plan and that age was not a factor in Trowbridge's firing.

Although Rule 408 explicitly states that it "does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution," commentators have noted that "[t]he clear import of the Conference Report as well as the general understanding among lawyers is that [inconsistent] conduct or statements [made in connection with compromise negotiations] may *not* be admitted for impeachment purposes." M. Graham, *Federal Rules of Evidence* 116 (2d ed. 1987). *See also* Steven A. Saltzburg & Kenneth R. Redden, *Federal Rules of Evidence Man-*

---

3. The EEOC asserts that "[i]n ruling to exclude the Bauer evidence, the court principally relied on *Olitsky.*" Brief of Appellant at 13. The truth of this assertion is by no means obvious. In point of fact, the district court referred to "the Fifth Circuit case" only in passing, and even

then it cited the case only to reject the EEOC's distinction between conciliation and investigation. This aspect of the district court's decision was based on language that was similar in both the ADEA and Title VII. *Id.* at A–7.

*ual* 286 (4th ed. 1986) ("In most cases ... the Court should decide against admitting statements made during settlement negotiations as impeachment evidence when they are used to impeach a party who tried to settle a case but failed. The philosophy of the Rule is to allow the parties to drop their guard and to talk freely and loosely without fear that a concession made to advance negotiations will be used at trial. Opening the door to impeachment evidence on a regular basis may well result in more restricted negotiations.").

"[T]he risks of prejudice and confusion entailed in receiving settlement evidence are such that often ... the underlying policy of Rule 408 require[s] exclusion even when a permissible purpose can be discerned." David W. Louisell & Christopher B. Mueller, *Federal Evidence* § 170, at 443 (rev. vol. 2 1985). In this case the proffer of the Bauer letters for impeachment purposes was but a thinly veiled attempt to get the "smoking gun" letters before the jury. *See* Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 408[05] at 408-31, 408-34 (1991) ("The almost unavoidable impact of the disclosure of such evidence is that the jury will consider the offer or agreement as evidence of a concession of liability.... The danger that the evidence will be used substantively as an admission is especially great when the witness sought to be impeached, by showing the compromise with a third party, is one of the litigants in the suit being tried."). *Accord McCormick on Evidence* § 274, at 813 (Edward W. Cleary ed., 3d ed. 1984). Given the propriety of the initial exclusion, we cannot say that it was clearly erroneous for the district court to exclude the Bauer letters the second time around. *See Williams v. Chevron U.S.A., Inc.,* 875 F.2d 501, 504 (5th Cir.1989) (exclusion of evidence offered for impeachment purposes was not an abuse of discretion when "it [was] undoubtedly possible that the jury would have confused its purpose for that precluded by Rule 408"). One could argue that the district court was merely heeding the Tenth Circuit's admonition in *Bradbury v. Phillips Petroleum Co.,* 815 F.2d 1356, 1364 (10th Cir.1987): "when the issue is

doubtful, the better practice is to exclude evidence of compromises or compromise offers."

## CONCLUSION

We AFFIRM the district court.