**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

Nos. 96-3311NE, 96-3427NE, 96-3429NE

_____

| | | |
|---|---|---|
| Aloysius L. Maschka, | * | |
| | * | |
| Appellee/Cross-Appellant, | * | |
| | * | |
| v. | * | On Appeal from the United |
| | * | States District Court |
| | * | for the District of |
| Genuine Parts Company, doing business | * | Nebraska. |
| as Napa Auto Parts, | * | |
| | * | |
| Appellant/Cross-Appellee. | * | |

_____

Submitted: May 22, 1997

Filed: August 11, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, BOWMAN and MORRIS SHEPPARD
ARNOLD, Circuit Judges.

_____

RICHARD S. ARNOLD, Chief Judge.

After Genuine Parts Company (GPC) demoted him, Aloysius Maschka resigned, and brought this action under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 (ADEA), and the Nebraska Act Prohibiting Unjust Discrimination in Employment Because of Age, Neb. Rev. Stat. §§ 48-1001 to -1010. A jury returned

a verdict in Maschka's favor and awarded damages for back pay. The District Court[1] denied GPC's motions for judgment as a matter of law and for a new trial, and awarded Maschka various forms of equitable relief, including an order for reinstatement to his original position. GPC appeals, and Maschka cross-appeals on certain issues. For the most part, we affirm.

I.

Genuine Parts Company (GPC), which does business as Napa Auto Parts, sells automotive parts both at retail, directly to consumers, and wholesale, to garages, service stations, and companies with large parts requirements. Aloysius Maschka worked since 1956 at one of GPC's distribution centers, in Omaha, Nebraska, as a member of the "outside" sales force, which is responsible for GPC's sales to wholesale and commercial purchasers. These salesmen receive commissions on the basis of their sales. In January 1993, GPC removed[2] Maschka and another person from the outside sales force, but offered both men non-commission sales positions in a local GPC retail store.

The "inside" sales position that Maschka assumed paid an hourly wage, at a rate which left Maschka with greatly diminished annual earnings. Shortly after starting in the new position, a personnel manager for GPC told Maschka that his pension benefits would decline substantially if he remained working there, because his benefits were calculated on the basis of his recent salary history. (This information proved not to be accurate. Maschka's pension benefits were calculated on the basis of the best five years of earnings in his most recent ten years. Therefore, his benefits would not have

---

[1]The Hon. Thomas M. Shanahan, United States District Judge for the District of Nebraska.

[2]The parties disputed at trial whether GPC had terminated Maschka and then rehired him, or just demoted him. "Removed" was the ambiguous term settled on to describe GPC's action.

been substantially affected by the change in position until five years later.) Maschka resigned from the new position in April 1993 and took a similar, but better paying, job at another company. He then brought this lawsuit.

At trial, Maschka adduced evidence that he was, at age 55, the oldest person on the outside sales force before he was removed from that position. The other person removed was 51. Of the seven salesmen remaining, one was 51, two were in their young forties, and four were 36 or younger. Maschka also produced evidence that GPC filled these positions with two people under the age of 40, although GPC contended that the positions filled were different.

GPC responded to Maschka's prima facie case with an explanation that it had decided to reduce the size of its outside sales force, and that Maschka's relatively poor performance in developing sales was the reason he was selected for removal. GPC explained that it wished to reduce its outlays for outside sales salaries, and doing so required the elimination of two positions. In choosing whom among the nine salesmen to remove, GPC said it excluded one person from consideration because he had specialized expertise in selling paint, an area in which GPC particularly wished to increase its market share. Of the remaining eight salesmen, GPC determined that Maschka had had the lowest sales volume in three of the previous five years and the second lowest the other two. Moreover, Maschka had obtained the second fewest new accounts of any salesman in 1992. Finally, GPC pointed to complaints about Maschka's poor customer service to justify its assessment that he was one of the two worst salesmen on the force. GPC also explained that the two people newly hired were in different, non-commission positions, with different duties, and therefore were not replacements.

Maschka rebutted GPC's explanation in an effort to prove that GPC's proffered reasons for its decision were pretextual. First, he demonstrated that there was minimal evidence that GPC's headquarters had directed the reduction in staff. The Omaha

branch's general manager's testimony about what GPC's management had said was the only evidence presented that GPC's upper management had ordered the staff reduction. GPC introduced no corroborating documents or testimony. Despite this manager's contention that a business downturn was the reason for the terminations, Maschka pointed out that GPC had not demonstrated any substantial decline in business that would explain the need for a reduction in personnel. Furthermore, because Maschka and his co-worker remained, and two new people were hired, there was a net increase in employees. Maschka also pointed out that GPC's removals on the alleged basis of merit were inconsistent with the company's policy, as detailed in its handbook, to terminate in reverse order of seniority when staff reductions were necessary. Finally, Maschka demonstrated that the two new salespeople GPC had hired handled accounts that once had been handled by members of the outside sales force. Consequently, even if the exact positions were not filled, the newly hired younger workers were, in essence, replacements for Maschka and his co-worker.

Maschka also challenged GPC's explanation of the procedure it used to determine which salesmen had the greatest merit. Maschka first argued that GPC's justification for excluding the paint specialist made little sense in light of two facts: first, the specialist resigned in February 1993, yet was not replaced (although GPC did subsequently assign many of the paint specialist's tasks to a non-commission employee), which would be odd if GPC was genuinely seeking to increase its paint-market presence; second, this explanation was not among those provided to the Nebraska Equal Opportunity Commission (NEOC) in a letter of explanation sent on behalf of GPC. He argued that this evidence created another reason to disbelieve the veracity of GPC's proffered decision-making criteria.

Maschka then showed that GPC's sales-volume comparison was also suspect. GPC's explanation at trial was that it looked at overall sales volume in making its decision, whereas its letter to the NEOC stated that it had looked only at sales volume in new accounts. More importantly, Maschka had never had the lowest amount of sales

in the years considered, and was in some years third or fourth from the bottom. Maschka argued that GPC created exceptions to its "rule" for the paint specialist, whom GPC exempted from consideration for firing, and who was below Maschka in sales during the two years they were salesmen together. Maschka also demonstrated that another salesman, whose sales were less than Maschka's, had not been considered deficient in the total-sales category because he was relatively new, and therefore expected not to have sales as large. He pointed to this circumstance as another suspicious exception to GPC's claimed decision criteria.

Third, Maschka rebutted GPC's explanation that he had the lowest number of accounts on the sales force by demonstrating that other evidence showed that he actually had more accounts than the figures presented by GPC indicated. Fourth, Maschka demonstrated that GPC did not keep regular records of how many new accounts each salesman obtained, which called into question GPC's explanation that it considered his low number of new accounts to provide partial justification for his termination. Fifth, Maschka presented company records that showed that he was not at the bottom of the rankings in making his sales quota, a statistic which compares a salesman's performance in a year to his sales in the previous year, as GPC contended he was. Finally, Maschka showed that GPC had never told him that his customer-service skills needed improvement, despite GPC's contention that this was one of the reasons for his termination. In summary, Maschka argued that GPC changed its explanation over time so that it could coherently explain its decision to remove him and his co-worker, but that the proffered justifications reeked of after-the-fact rationalization.

The jury returned a verdict for Maschka, and found that GPC's discrimination was willful. The jury awarded back-pay damages totalling $50,900.81. The District Court denied GPC's motions for judgment as a matter of law and for a new trial. The District Court then ordered GPC to reinstate Maschka, or to pay him until reinstatement the difference between what his 1996 salary would have been at GPC and what he

actually was receiving from another employer. It also ordered GPC to credit Maschka's pension retroactively as if he had remained in the outside-sales position. Finally, the Court awarded $50,900.81 in liquidated damages based on the jury's finding that the violation of the ADEA had been willful. GPC then took this appeal.

## II.

GPC appeals the finding of liability on several grounds. Its principal contention is that the evidence is insufficient to prove that it took its action against Maschka because of his age. It also appeals the admission into evidence of GPC's letter to the NEOC and the jury's finding that Maschka was constructively discharged from the inside sales position. We consider each question separately.

## A.

GPC contends that it was error for the court to admit Exhibit 1, which was a letter sent by GPC's counsel to the NEOC that explained why GPC had terminated Maschka from his outside sales position. It points to a Tenth Circuit case, Equal Opportunity Employment Commission v. Gear Petroleum, Inc., 948 F.2d 1542 (10th Cir. 1991), to support its position. That case affirmed the exclusion of an employer's position statement, like the letter in Exhibit 1, under Federal Rule of Evidence 408 ("statements made in compromise negotiations . . . not admissible"). Id. at 1544-45. GPC also argues that a provision of the ADEA makes inadmissible documents, such as this one, which are part of informal conciliation proceedings, because Title VII makes such documents inadmissible. Compare 42 U.S.C. § 2000e-5(b) (directing EEOC to attempt to remedy discrimination through conciliation, but barring statements in such proceedings from later being admitted as evidence), with 29 U.S.C. § 626(b) (directing EEOC to attempt conciliation, but containing no provision regarding admissibility). Gear Petroleum held that the ADEA's provision did not require exclusion of such evidence. 948 F.2d at 1543-44. Neither the case nor the statute

helps GPC in any event, however, because the sole ground on which it objected below to Exhibit 1 was relevance. See Tr. 228, 237-38, 241. The District Court was correct to find the document relevant: Maschka used it to demonstrate that GPC did not have consistent reasons for its decision, which tends to prove that the reasons it offered at trial were pretextual. The fact that the explanation in the letter was offered by someone different from the two managers in Omaha who made the actual decision does not make the document non-relevant. At most, this circumstance would affect the weight of the claim that GPC's reasons changed over time. That is a determination for the trier of fact, not the Court. We cannot say that Exhibit 1 was not properly before the jury.

B.

GPC's principal point on appeal is that Maschka presented insufficient evidence from which a reasonable jury could conclude GPC removed him from the outside sales position because of his age. We recently considered the precise contours of this issue in our en banc decision, Ryther v. KARE 11, 108 F.3d 832 (8th Cir.), cert. denied, 117 S. Ct. 2510 (1997). The holding of that case may be summarized as follows: if a prima facie case is made, and if the plaintiff offers evidence tending to show that the defendant's proffered reasons for its decision were not the real reason, then the jury may decide the case, unless the "evidence of pretext . . . is, standing alone, inconsistent with a reasonable inference of age discrimination." Id. at 837; see also Johnson v. Baptist Med. Ctr., 114 F.3d 789, 789 (8th Cir. 1997) ("We held [in Ryther] that the plaintiff's evidence must tend to make out a prima facie case and support a finding that the defendant's proffered reasons for the decision complained of were pretextual."), amending on denial of suggestion for rehearing en banc 97 F.3d 1070 (8th Cir. 1996). Maschka met the first two requirements by establishing a prima facie case (he was older than 40, and he was replaced by someone younger than 40), and offering ample evidence from which a jury could conclude that the reasons offered by GPC for Maschka's removal were pretextual. He introduced evidence tending to show that the considerations GPC used to conclude that it should remove Maschka did not stand up

to careful scrutiny or were not supported by the facts. Furthermore, the evidence Maschka presented was not inconsistent with a finding of age discrimination; rather, it tended to show that GPC's proffered reasons were flimsy, and thus susceptible of disbelief.[3] Once an age-discrimination plaintiff has done as much as Maschka, a jury may (but need not) find for him. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993) ("[R]ejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, and . . . 'no additional proof of discrimination is required.'" (footnote and citation omitted)). The jury had sufficient evidence from which it could find GPC's justifications unconvincing, which under Hicks and Ryther permitted it to infer that GPC had impermissibly discriminated against Maschka. Therefore, the District Court properly denied GPC's motions for judgment as a matter of law and for a new trial.

## C.

GPC also contends on appeal that it should have been granted judgment as a matter of law on the claim of constructive discharge from the inside sales position. It argues that Maschka failed to demonstrate that the conditions of his employment were so intolerable that they amounted to constructive discharge, or that GPC had created the conditions with the intent to force Maschka to quit. We believe that a reasonable

---

[3]Maschka's evidence of pretext was not inconsistent with a finding of intentional discrimination as, for example, the plaintiff's evidence was in Barber v. American Airlines, Inc., 791 F.2d 658 (8th Cir.), cert. denied, 479 U.S. 885 (1986). There, the age-discrimination plaintiffs attempted to show the proffered justification, a company policy, was pretextual by using evidence that this policy had been inconsistently applied. We held that this evidence was not sufficient to present the issue to the jury because the policy's inconsistent application generally benefitted other older employees. Id. at 660; see also Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1337-38 (8th Cir. 1996) (plaintiff could not use evidence that he was actually fired because he threatened to investigate securities-law violations as proof of pretext to support finding of age discrimination).

jury could find that GPC constructively discharged Maschka. Maschka testified that a GPC personnel manager told him that his pension benefits would decline substantially if he remained in his new, lower-paying, position. Because Maschka was getting towards the point in life when the value of his pension would critically affect his well-being, such information would naturally lead him to consider carefully whether he should continue in his position. Moreover, Maschka produced comments from GPC's management that reflected the company's belief that Maschka did not fit into its future plans (thus indicating the company wanted him to quit). With evidence of both GPC's desire to see Maschka leave and threats of financial penalties for his staying, the jury could reasonably conclude that GPC intentionally made the conditions of Maschka's employment sufficiently intolerable so that he would leave.[4]

## III.

Both parties appeal the relief granted. GPC appeals the denial of judgment as a matter of law that the violations were not willful. Maschka cross-appeals the District Court's failure to submit to the jury a question about damages for emotional distress, and the extent of its award of future compensation.

### A.

The ADEA provides for liquidated damages in an amount equal to the damages awarded by the jury if the jury finds that the defendant willfully violated the ADEA. 29 U.S.C. § 626(b). A violation is willful "if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Hazen Paper Co. v. Biggins, 507 U.S. 604, 614 (1993) (citation and internal quotations omitted). Generally, an employer who takes an action against an employee because of

---

[4]Maschka's conditional cross-appeal regarding the constructive-discharge question is therefore moot.

his age will have committed a willful violation if he knows that the ADEA applies to the situation. Thus, a non-willful violation might occur if the employer reasonably believed in good faith that he was allowed to make an age-based decision in the particular case. Id. at 616; accord, Curtis v. Electronics & Space Corp., 113 F.3d 1498, 1503 (8th Cir. 1997). The jury found that GPC had removed Maschka because of his age. There was evidence, principally from a GPC employee manual that described its policies against discrimination, that GPC knew it could not generally make adverse employment decisions on the basis of age. GPC presented no evidence that it made its decision under the erroneous belief that it was entitled to an exception to the provisions of the ADEA. Consequently, there was sufficient evidence from which a jury could conclude that the violation was willful, and thus the District Court's award of liquidated damages was proper.

B.

The District Court ordered that Maschka be reinstated to his original outside sales position and found that this was a just remedy that gave full effect to the purpose of the ADEA. The Court also ordered that GPC credit Maschka's pension retroactively for the amount of pay he would have received had GPC not removed him from the outside sales position. GPC did not have an outside sales position available at the time the Court entered its order. Consequently, the Court ordered that GPC reinstate Maschka to the first available position, and, until then, pay Maschka the difference between what his 1996 earnings would have been in his position at GPC ($43,966) and the salary he earned in his current position with another company. By the terms of the Court's order, this remedy extends for as many years as GPC fails to reinstate Maschka. Therefore, the order tacitly assumes that Maschka would have continued to earn $43,966 per year until his retirement. Maschka contends that the District Court erred because it failed to order GPC, if it did not reinstate him by the end of 1996, to compensate him for the increase in earnings he would have had at GPC. We agree.

"A district court is obligated to grant a plaintiff who has been discriminated against on account of his [age] . . . the most complete relief possible." Briseno v. Central Tech. Community College Area, 739 F.2d 344, 347 (8th Cir. 1984). Although the tailoring of this relief lies within the equitable discretion of the trial court, we may modify its orders to ensure that the fullest relief appropriate is afforded a deserving plaintiff. Ingram v. Missouri Pac. R.R. Co., 897 F.2d 1450, 1456 (8th Cir. 1990). The District Court likely assumed that GPC would make a position available to Maschka fairly soon, so that it did not need to consider what Maschka's front-pay damages would be in years after 1996. Its assumption, however, proved inaccurate. Maschka has still not been reinstated. Consequently, Maschka's relief is not complete, because the undisputed evidence showed that his salary would have increased each year after 1996. Moreover, under the order as it now stands, GPC will have a diminishing incentive to find a position for Maschka as time goes on, because Maschka's outside pay will probably grow, while the court-ordered salary will remain the same. Thus, GPC will owe Maschka less for each passing year it fails to reinstate him.

An expert presented figures as to what Maschka's annual earnings would have been in his original position until 2002, the expected year of his retirement. A summary table was admitted into evidence, and the Court's award of past pension benefits and its calculation of Maschka's 1996 earnings follow the figures in this table. We think Maschka's relief would be complete if GPC were ordered to pay him the difference between what the expert predicted he would earn each year at GPC and what he currently earns, or should reasonably earn, elsewhere, until he is reinstated. Because the expert's figures were adopted by the District Court, and are not challenged on appeal to us, we have taken the projected salary figures from this exhibit. Therefore, we direct the District Court, on remand, to enter an order requiring that GPC pay to

Maschka, until his reinstatement, the difference between his earnings as projected by Maschka's expert in Exhibit 16, Jt. App. 140-49, and his salary elsewhere.[5]

C.

Maschka cross-appeals the District Court's refusal to instruct the jury that it could award damages for emotional distress on his state-law claim. We have interpreted the ADEA not to permit the award of such damages. Glover v. McDonnell Douglas Corp., 981 F.2d 388, 395 (8th Cir. 1992), vacated on other grounds and remanded for reconsideration, 510 U.S. 802 (1993), and remainder of decision adopted upon remand, 12 F.3d 845, 848 (8th Cir.), cert. denied, 511 U.S. 1070 (1994). Maschka contends, however, that such damages are available under Nebraska's anti-age-discrimination law. The Nebraska Supreme Court has not ruled one way or the other on the issue, so we are obligated to predict what it would hold if the issue were presented to it. A prediction of this kind is necessarily uncertain, and it may prove in the future to have been wrong. Our task is made more difficult in this case by an absence of decisions considering the issue in related areas of law. Subject to these difficulties, we think that the Nebraska Supreme Court would hold that damages for emotional distress are not recoverable under the state's anti-age-discrimination law.

---

[5]Maschka's projected earnings at GPC are as follows: 1997: $45,285; 1998: $46,643; 1999: $48,043; 2000: $49,484; 2001: $50,968; 2002: $21,874 (reflecting Maschka's presumed retirement at age 65, at the end of May).

The District Court's order also did not explicitly provide for the crediting of Maschka's pension in the event he was not rehired by the end of 1996. GPC should credit Maschka's pension each year in accordance with the above amounts until it reinstates him. This will not provide Maschka double relief, because his current job does not provide a pension. As we understand GPC's counsel's statement at oral argument, GPC does not contest this aspect of the remedy.

The Nebraska Supreme Court has decided that it will, as a general rule, conform its reading of the state act to interpretations of the federal act. Humphrey v. Nebraska Public Power Dist., 243 Neb. 872, 878, 503 N.W.2d 211, 217 (1993) (citing Allen v. AT&T Technologies, Inc., 228 Neb. 503, 507, 423 N.W.2d 424, 428 (1988)). We doubt that the Court would depart from this rule in considering the availability of damages for emotional distress. The wording of the state and federal statutes is very similar. The pertinent state statute provides that:

> In any action brought to enforce the provisions of 48-1001 to 48-1009, the court shall have jurisdiction to grant such legal or equitable relief as the court may deem appropriate to effectuate the purposes of sections 48-1001 to 48-1009, including judgments compelling employment, reinstatement, or promotion, or enforcing liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation.

Neb. Rev. Stat. § 48-1009. The federal statute provides that:

> . . . In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

29 U.S.C § 626(b). We think that the substantial similarity between the statutes would likely lead the Nebraska Supreme Court to follow our holdings that prohibit recovery of damages for emotional distress under the ADEA.[6]

---

[6]GPC appeals the District Court's permitting Maschka and his wife to testify about their emotional distress. No objection was made to the testimony below, see Tr. 79-80, 145-46, and the issue was therefore not preserved for our consideration on appeal.

IV.

For the reasons described above, we affirm the judgment of the District Court, except that the relief granted should be amended to reflect Maschka's expected increase in salary in the years after 1996, and to make specific the provision for Maschka's pension rights, in accordance with footnote five of this opinion. The cause is remanded for entry of an amended judgment in accordance with this opinion

It is so ordered.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.