**Darice BROOKS, Plaintiff,**

v.

**GRANDMA'S HOUSE DAY CARE CENTERS, INC., Defendant.**

**No. 01–C–0375.**

United States District Court, E.D. Wisconsin.

Oct. 15, 2002.

F. Thomas Olson, Milwaukee, WI, for Plaintiff.

Roger Pettit, Milwaukee, WI, for Defendant.

---

*MEMORANDUM*

ADELMAN, District Judge.

Plaintiff Darice Brooks sued her former employer, defendant Grandma's House Day Care Centers, Inc., alleging that she was discharged based on her race (African–American) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. This memorandum supplements my oral ruling on an evidentiary issue that arose during the trial, namely whether a letter written by defendant's counsel to the Equal Opportunity Employment Commission ("EEOC") responding to plaintiff's allegation of discrimination was admissible in evidence. I found that it was.

## I.  FACTS

Defendant, a corporation that operates a number of day care centers in the Milwaukee area, hired plaintiff as a lead teacher at its center in Brookfield, Wisconsin, a Milwaukee suburb. Plaintiff was the only African–American teacher at the Brookfield Center, and none of the children there were African–American.

Plaintiff was hired with a forty-five day probationary period. Kim Spankowski, the director of the Brookfield Center, testified that during plaintiff's probationary period she advised plaintiff that she needed to improve her teaching, and that she provided a written review stating what plaintiff needed to do in order to be retained. Spankowski listed as deficiencies plaintiff's reluctance to take charge of her class, the quality of her supervision, and the nature of her interaction with the children.

On May 10, 1999, Spankowski asked plaintiff to transfer to defendant's Highland Center. A majority of the children and some of the teachers at the Highland Center were African–American. Plaintiff testified that Spankowski told her that if she agreed to the transfer Spankowski would give her a good review when she received her forty-five day evaluation. Spankowski denied this assertion.

Spankowski testified that she asked plaintiff to transfer because the Highland Center needed teachers, because she thought that the Highland director, who was very experienced, might be able to help plaintiff improve, and because the Highland Center was an easier commute for plaintiff.

After spending one day at Highland, plaintiff decided that she did not wish to transfer. She preferred the facility at Brookfield and also regarded the Brookfield location as more convenient. Thus, the next day she returned to the Brookfield Center.

On May 20, 1999, Spankowski terminated plaintiff's employment. She noted on plaintiff's final review that she had improved but not sufficiently to warrant continued employment.

## II.  DISCUSSION

At trial, plaintiff attempted to introduce in evidence a statement in a letter written by defendant's counsel, Roger Pettit, to the EEOC. Defendant submitted the letter in response to the EEOC's notice to it of plaintiff's discrimination charge. The letter was intended to serve "as the Company's statement of position with respect to the allegations contained in the charge." (Pettit Letter of 4/5/00 attached to Def.'s Mem. in Support of Def.'s Mot. in Limine.)

The statement that plaintiff sought to introduce was as follows:

The Employee is correct that she was offered the opportunity to transfer to the Company's Highland Center on West Vliet Street, but omits to explain the reason for the offer. The offer to

transfer from the Brookfield Center to the Highland Center was based upon her lack of transportation. Note item number 5 on the April 30th conference report. The Employee did not drive to and from work; rather she relied upon her fiancé to pick her up. Unfortunately, her fiancé would arrive at the facility an hour and a half prior to the end of her shift. During that time, the fiancé would either stay on the playground or in her room. When that occurred, the Employee was distracted from her duties and, in some instances, would remain in the room when the children went out for recess with only the Assistant, thus taking the class out of the ratio of teachers to students mandated by the State. While employed at the Company, the Employee was also attending M.A.T.C. part-time. In an attempt to reduce her transportation problems and to alleviate a performance problem caused by her boy-friend's presence on the premises, the offer to transfer to the Highland Center was made. Jill Tritz, the Supervisor at the Highland Center, advised that the Employee was at the Center only on one day, May 11th, and refused any work load. She sat for the balance of the day and returned to the Brookfield Center.

(*Id.* at 2–3.) Plaintiff wanted to introduce the statement because she believed that it cast doubt on Spankowski's credibility because it made no mention of two of the reasons that Spankowski testified had caused her to ask plaintiff to transfer, i.e., that the Highland Center needed teachers and that its director could provide her with superior training.

Defendant stipulated to the authenticity of the letter but argued that 42 U.S.C. § 2000e–5(b) barred its admission in evidence. Section 2000e–5(b) provides in part:

If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. *Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned.*

*Id.* (emphasis added).

In determining the effect of the statute my task was to implement the language enacted by Congress. *Kerr v. Puckett,* 138 F.3d 321, 323 (7th Cir.1998). The goal of statutory construction is to ascertain the intent of the legislature, and the language of the statute is the most reliable indicator of congressional intent. *Time Warner Cable v. Doyle,* 66 F.3d 867, 876 (7th Cir. 1995).

The statute bars statements made during EEOC attempts to resolve employment discrimination cases through "informal endeavors." § 2000e–5(b). Informal endeavors include such methods as "conference, conciliation and persuasion." *Id.* The statute provides that the EEOC may utilize such endeavors "if [it] determines after ... investigation that there is reasonable cause to believe that the charge is true." *Id.*

The letter in the present case was not written in the course of informal endeavors by the EEOC to settle the case. Further, the EEOC had not yet completed its investigation and had not determined that there was reasonable cause to believe that the charge was true. Thus, I found that the plain language of § 2000e–5(b) did not bar admission of the statement.

Congress's intent in prohibiting statements made during conciliation efforts was to encourage free and open communication in order to achieve negotiated settlements. *Branch v. Phillips Petroleum Co.,* 638 F.2d 873, 880–81 (5th Cir.1981). The statute's purpose is similar to that embodied in the traditional evidentiary rule making offers of compromise and settlement inadmissible. *See e.g.,* Fed.R.Evid. 408; *Branch,* 638 F.2d at 881 n. 6. Thus, the statute did not bar admission of the Pettit letter, not only because the letter was not written in the course of EEOC conciliation efforts, but also because it contained no statements relating to compromise, settlement or negotiation.

The present case is indistinguishable from *Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471, 1476–77 (5th Cir.1992). In *Olitsky,* as here, the plaintiff sought to admit a letter written by the defendant's attorney, Ronald Mangel, responding to the notice from the EEOC of plaintiff's discrimination claim. The Mangel letter, like the letter here, denied that the employer had discriminated and asserted facts in support of the employer's position. The court ruléd that the letter was admissible because it contained no information relating to settlement but, rather, only factual information relating to defendant's position on the merits. *Id.* at 1477.[1] Similarly, the Pettit letter made no mention of settlement but, instead, provided purely factual material in support of defendant's position that it had not discriminated.

The rationale of *Olitsky* also finds support in *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 193 (2d Cir.1991), an age discrimination case. There, the court said:

> Factual statements regarding past events are distinguishable from offers of compromise, and if the principal objective of an EEOC proceeding is to ascertain what has occurred and, whenever possible, to resolve disputes without litigation, a rule that allows employers to give off-the-record accounts of relevant events will not necessarily advance that objective. Accordingly, based on both the ADEA's lack of an express analog to Section 706(b) of Title VII and our belief that the EEOC proceedings will not be impaired by a rule allowing the admission in litigation of factual statements made during the course of EEOC proceedings, we hold that the district court erred when it refused to consider Lilco's EEOC statement.

*Id.* (footnote omitted).

Defendant argued that the letter should be excluded based on *EEOC v. Gear Petroleum,* 948 F.2d 1542 (10th Cir.1991), where the court excluded a statement by a defendant's attorney to the EEOC. *Gear,* however, is distinguishable from the present case because the *Gear* court based its decision on its conclusion that the statement in question was made "in the context of compromise negotiations." *Id.* at 1545. In contrast, as has been discussed, the Pettit letter was not written in such a context.

Defendant did not dispute that the statement was relevant or argue that it was inadmissible for any reason other than § 2000e–5(b). Defendant did argue, however, that I should exclude the statement because, otherwise, Pettit would have to testify in order to explain it. Although Pettit ultimately did not testify, the possibility that he might have felt obliged to do so caused me concern because it is generally undesirable for lawyers serving as advocates at trial, as Pettit was, to also be

---

1. In an earlier trial of the case, the Fifth Circuit held that the district court erred in admitting the entire EEOC file. *Olitsky v.* *Spencer Gifts, Inc.,* 842 F.2d 123, 127 (5th Cir.1988).

witnesses. *See e.g.,* Wis. Sup.Ct. R. 20:3.7. However, because the statement was relevant and arguably important to plaintiff's case, it would have been unfair to plaintiff to exclude the statement for this reason.

Therefore, for the reasons stated, I determined that the Pettit statement was admissible.