**SOUTHWEST NURSERIES, LLC, Plaintiff,**

v.

**FLORISTS MUTUAL INSURANCE, INC.; FMI Brokerage; and Florists Insurance Service, Inc., Defendants.**

**No. CIV.A.00–D–2198.**

United States District Court, D. Colorado.

April 30, 2003.

Kimberly A. Bruetsch, Robinson, Waters & O'Dorisio, P.C., Denver, CO, Otto K. Hilbert, Colorado Springs, CO, Kirk P. Brown, Kirk, Patterson, Brown, Law Firm, Pueblo, CO, for plaintiff.

Christen Arthur Mattison, Hall & Evans, Denver, CO, for defendants.

## ORDER ON PLAINTIFF'S AMEND-
## ED MOTION TO FILE A SUP-
## PLEMENTAL PLEADING

SHAFFER, United States Magistrate Judge.

THIS MATTER comes before the court on Plaintiff Southwest Nurseries' Amended Motion to File a Supplemental Pleading, dated March 13, 2003. The court received Defendants Florist Mutual Insurance, Inc., FMI Brokerage, and Florists Insurance Service, Inc.'s (collectively "Florists") Opposition on March 24, 2003, and Plaintiff's Reply on April 8, 2003. The court has considered the parties' submissions and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the court will deny Plaintiff's Amended Motion to File a Supplemental Pleading.

### BACKGROUND

Plaintiff's Amended Complaint, filed on June 4, 2001, seeks damages for losses incurred by Southwest Nurseries, LLC ("Southwest"), when a severe hail storm destroyed its inventory of plants, shrubs, and trees. Plaintiff contends that Defendants verbally and in writing represented that they would act as Southwest's agent in arranging for the maximum insurance coverage for Plaintiff's year–2000 inventory under the Federal Crop Insurance program. Southwest contends that Defendants failed to honor their agreement and breached their fiduciary duty and the standard of care owed to Plaintiff. The Amended Complaint asserts claims for breach of agreement, breach of implied agreement, negligence, bad faith, and violation of the Colorado Consumer Protection Act, Colo.Rev.Stat. § 6–1–105(a).

On August 8, 2001, this court granted Florists' Motion to Compel Arbitration and for Stay of Litigation Pending Arbitration. In my Order, I indicated that the following factual determinations were the proper subjects of arbitration: (1) whether Defendants were acting, in whole or in part, as agents for the Rural Community Insurance Service ("RCIS") in connection with federal crop insurance issued to Southwest; (2) if Defendants were acting as agent for RCIS, did they make any misrepresentations or other erroneous actions or advice; (3) whether Plaintiff relied in good faith upon such misrepresentations or erroneous actions or advice; and (4) whether, in fairness and equity, Plaintiff should be granted the amount of liability which should have been established under the coverage contemplated by Southwest. In requiring Plaintiff to submit to binding arbitration, the court specifically declined to decide which, if any, of the arbitration panel's findings may have a preclusive effect in any subsequent court proceeding. On November 27, 2002, an arbitration panel of the American Arbitration Association entered findings of fact, conclusions of law and an award in favor of Southwest in Arbitration Number 77–Y–195–00281–01.

Southwest sought leave to file a supplemental pleading on March 13, 2003. In the proposed supplemental complaint, Southwest alleges, in pertinent part, that:

2. Florists has a duty to act in good faith to settle and pay the claim of Southwest.

2.[1] Florists has failed to pay said claim and has failed to make a good faith effort to settle with the Plaintiff.

3. The acts and/or omissions of the Defendants by which they breached their obligations and duties were

---

1. The court has not corrected the mis-numbered paragraphs in Plaintiff's proposed Supplemental Complaint.

and are done with a willful, wanton, intentional, and reckless disregard of the rights of the Plaintiff.

Plaintiff contends these supplemental allegations are relevant to the fourth claim for relief in its Amended Complaint, which alleges that Defendants acted and "continues to act in bad faith." Specifically, Southwest argues that Defendants' settlement posture throughout the litigation, and particularly during a court-supervised settlement conference on September 30, 2002, violated Florists' duty of good faith and fair dealing which "extends 'to the assertion, **settlement** and litigation of contract claims and defenses.'" *See* Plaintiff's Reply to Defendants' Opposition, at 4 (emphasis in original). *See also Gorab v. Equity General Agents, Inc.,* 661 P.2d 1196, 1199 (Colo.App.1983) (holding that insured who is injured by bad faith breach of insurance contract may be entitled to compensatory damages, including damages for emotional distress). Southwest contends that Defendants' settlement offer was based upon a loss calculation that the arbitration panel subsequently found was not credible. *See* Plaintiff's Amended Motion to File a Supplemental Pleading, at 1. Defendants argue in their Opposition that the proposed supplemental complaint should be denied as futile and unduly prejudicial under Fed.R.Evid. 408.

## ANALYSIS

■ Rule 15(d) of the Federal Rules of Civil Procedures states that the court may "upon such terms as are just, permit [a] party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." A motion to amend under Rule 15(d) is addressed to the sound discretion of the court, and leave to serve a supplemental pleading "should be liberally granted unless good reason exists for denying leave, such as prejudice to the defendants." *Walker v. United Parcel Service, Inc.,* 240 F.3d 1268, 1278 (10th Cir.2001) (quoting *Gillihan v. Shillinger,* 872 F.2d 935, 941 (10th Cir.1989)). The court should apply the same standard for exercising its discretion under Rule 15(d) as it does for deciding a motion under Rule 15(a). *See First Savings Bank v. U.S. Bancorp,* 184 F.R.D. 363, 368 (D.Kan.1998) (noting that Rule 15 is intended to facilitate a full adjudication of the merits of the parties' disputes). While Fed.R.Civ.P. 15(a) requires that leave to amend be freely given, that requirement does not apply where an amendment obviously would be futile. *T.V. Communications Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d 1022, 1028 (10th Cir.1992).

Here, Plaintiff's proposed supplemental complaint raises allegations concerning Florists' conduct in the context of settlement negotiations, which necessarily implicates the policies underlying Rule 408 of the Federal Rules of Evidence. Weighing the competing objectives underlying the applicable Federal Rules of Civil Procedure and Evidence, I find that the proposed supplemental complaint would violate Fed.R.Evid. 408 and be unduly prejudicial.

■ Under Colorado law,[2] an insurer acts in bad faith when the insurer's conduct is unreasonable and the insurer knows that the conduct is unreasonable or recklessly disregards the fact that the conduct is unreasonable. *See Ballow v. PHICO Insurance Co.,* 875 P.2d 1354, 1363

**2.** In this diversity action, the court must apply the choice of law principles of the state in which it sits. *See Century 21 Real Estate Corporation v. Meraj International Investment Corp.,* 315 F.3d 1271, 1281 (10th Cir.2003). Applying Colorado choice of law rules, Colorado law governs this insurance dispute. *Cf. Nicholls v. Zurich American Insurance Group,* 244 F.Supp.2d 1144, 1153 (D.Colo.2003).

(Colo.1993). *See also Arenberg v. Central United Life Insurance Co.*, 18 F.Supp.2d 1167, 1183 (D.Colo.1998) ("[w]hether a defendant owes a legal duty to a particular plaintiff, as well as the scope of the duty, are questions of law for the court to resolve'").

Bad faith breach of an insurance contract encompasses the entire course of conduct and is cumulative.... A willful and wanton breach is a refusal to pay insurance benefits when due and is established when an insurer acts without justification and in disregard of the plaintiff's rights.... The determination of whether an insurer has in bad faith or willfully and wantonly breached its duties to an insured is one of reasonableness under the circumstances.... It is reasonable for an insurer to challenge claims that are fairly debatable.... If an insurer does not know that its denial of a claim is unreasonable and does not act with reckless disregard of a valid claim, the insurer's conduct would be based upon a permissible, albeit mistaken, belief that the claim is not compensable.

*Pham v. State Farm Mutual Automobile Insurance Co.*, 70 P.3d 567, 572 (Colo.App. 2003) (internal citations omitted). Colorado law regulating the insurance industry specifically prohibits unfair claim settlement practices, which are defined to include:

(VI) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; or

(VII) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds; ...

Colo.Rev.Stat. § 10–3–1104(1)(h). Colorado courts also have recognized that an insurer's post-complaint or litigation conduct may, in some instances, be relevant to claims asserted by a plaintiff-insured. *Cf. Tait v. Hartford Underwriters Insurance Co.*, 49 P.3d 337, 342–43 (Colo.App.2001) (holding that trial court did not abuse its discretion in increasing an award of exemplary damages based upon "extraordinary facts in this case" where insurer complained about expedited trial date, committed discovery violations, and delegated to counsel its continuing obligations to the insured); *Southerland v. Argonaut Insurance Co.*, 794 P.2d 1102, 1106 (Colo.App. 1990) (trial court properly admitted evidence of post-complaint bad-faith conduct, such as late payments of plaintiff's bi-weekly benefits).

Rule 408 of the Federal Rules of Evidence states that "evidence of (1) furnishing or offering or promising to furnish ... a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount." This exclusionary rule reflects a well-recognized public policy in favor of non-litigious solutions to disputes, which is equally applicable to insurance litigation. *See Olin Corp. v. Insurance Co. of North America*, 603 F.Supp. 445, 449–50 (S.D.N.Y.1985). However, Rule 408 does not impose an absolute ban on the admission of statements made during settlement negotiations. *See Coakley & Williams Const., Inc. v. Structural Concrete Equipment, Inc.*, 973 F.2d 349, 353 (4th Cir.1992) (evidence of settlement negotiations only inadmissible if offered to provide liability or damages). For example, evidence of settlement offers may be admissible to challenge a claim of undue delay, to prove the defendant's knowledge and intent, or for purposes of impeachment or rebuttal. *See, e.g., Bankcard America, Inc. v. Universal Bancard Systems, Inc.*, 203 F.3d 477, 484 (7th Cir.), *cert. denied*, 531 U.S.

877, 121 S.Ct. 186, 148 L.Ed.2d 128 (2000). On balance, however, the better practice is to exclude evidence of compromises or compromise offers whenever the issue of admissibility is doubtful. *Bradbury v. Phillips Petroleum Co.,* 815 F.2d 1356, 1364 (10th Cir.1987). A decision to exclude evidence under Rule 408 will be reviewed only for abuse of discretion. *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.,* 865 F.2d 506, 511 (2d Cir. 1989).

Plaintiff's proposed supplemental complaint alleges that Florists acted in bad faith by failing "to make a good faith effort to settle" the instant litigation. Without further explanation, the court must conclude that Southwest seeks to offer evidence of Defendants' settlement conduct to prove liability under Plaintiff's fourth claim for relief. Yet, Rule 408 specifically bars evidence of settlement negotiations offered to prove liability. *See Reeder v. American Economy Insurance Co.,* 88 F.3d 892, 894–95 (10th Cir.1996) (in affirming decision to exclude evidence of insurer's settlement offer, held that Rule 408 does not distinguish between settlement offers made pursuant to insurer's public policy or statutory responsibilities and settlement offers made for other reasons); *Vanguard Insurance Co. v. Havadjia,* 886 F.2d 1321 (Table) (9th Cir.1989) (in case asserting bad faith claims, trial court properly excluded evidence of insurer's settlement offers); *Bower v. Stein Eriksen Lodge Owners Ass'n, Inc.,* 201 F.Supp.2d 1134, 1139–40 (D.Utah 2002) (in excluding evidence of settlement negotiations, rejected defendants' argument that declarations merely offered to prove plaintiffs' bad faith). The same policy considerations bar the supplemental complaint in this case. While some courts have allowed evidence of an insurer's post-litigation conduct in cases alleging bad faith, those decisions are readily distinguishable. For example, in *Massey v. Farmers Insurance Group,*

986 F.2d 1428 (Table) (10th Cir.1993), the trial court admitted evidence that the insurer's representatives had delayed seeking settlement authority for almost a year in an effort to pressure plaintiffs to accept a lesser amount. In other cases, courts have allowed evidence of post-litigation conduct that did not involve the degree of subjectivity inherent in settlement negotiations. *See, e.g., Tait,* 49 P.3d at 342–43 (insurer committed discovery violations); *Southerland,* 794 P.2d at 1106 (allowed evidence of late payments of plaintiff's bi-weekly benefits). Finally, in *Urico v. Parnell Oil Co.,* 708 F.2d 852, 854–55 (1st Cir.1983), the court held that evidence of an insurance company's conduct in settlement negotiations was admissible where the defendant had challenged the plaintiffs' failure to mitigate damages.

In this case, Plaintiff's supplemental complaint seems to be premised on the belief that Defendants' settlement offers were unreasonably low and, therefore, presumptively evidence of bad faith. In reality, settlement strategies are more the product of art than science, and fraught with the potential for mis-perception by all parties. Several factors may influence the formulation of a settlement offer, including a party's or counsel's analysis of the legal and/or factual merits of that party's position in the litigation. *Cf. Signature Development Companies, Inc. v. Royal Insurance Company of America,* 230 F.3d 1215, 1223–24 (10th Cir.2000) (expressing an unwillingness "to infer that 'settlement authority invariably constitutes a final, objective assessment of a claim's worth to which an insurer may be held on penalty of bad faith'"). All too frequently, an obviously implausible opening offer simply invites an equally unreasonable counter-offer. *Cf. Thompson v. Safeway, Inc.,* 2002 WL 500547, *2 (N.D.Ill.2002) (refusing to admit evidence of settlement negotiations where plaintiff delayed and complicated settlement negotiations and then wished to cite

that delay as evidence of defendant's bad faith). Plaintiff suggests that Florists' settlement position is evidence of bad faith for which additional liability may be assessed. *But see Greil v. Geico*, 184 F.Supp.2d 541, 545–46 (N.D.Tex.2002) (holding that insurer's settlement offer below policy limits was not evidence of bad faith). Southwest presumably would hold its own rejected settlement offers to a far more lenient standard. As the Advisory Committee Notes to Rule 408 correctly observed, a settlement offer "may be motivated by a desire for peace rather than from any concession of weakness of position." If an insurance company risks a bad faith claim for failing to make a settlement offer deemed acceptable by the insured, then the price of peace becomes total capitulation. That outcome would discourage settlement negotiations and defeat the public policy underlying Rule 408.

■ Permitting evidence of unsuccessful settlement negotiations also creates a very real potential for jury confusion and may suggest a decision on an improper basis. *See Weir v. Federal Insurance Co.*, 811 F.2d 1387, 1395 (10th Cir.1987). Even where evidence is not barred under Rule 408, the trial court must still perform a balancing analysis under Rule 403 of the Federal Rules of Evidence, "weighing the probative value of the proffered evidence against its potential for unfair prejudice to the objecting party." *Scott v. Goodman*, 961 F.Supp. 424, 439 (E.D.N.Y.1997). *See also Johnson v. Land O'Lakes, Inc.*, 181 F.R.D. 388, 393 (N.D.Iowa 1998) (noting that evidence of settlements may have an "undue tendency to suggest decision on an improper basis"). At trial, a party's settlement offer could not be considered in a vacuum, but rather would have to be evaluated in the full context of settlement negotiations. That would necessarily involve testimony explaining negotiation strategies and the thought processes of the settlement participants. The parties might well feel compelled to offer testimony from their respective counsel to explain their settlement strategies and the rationale for any offers or counter-offers. Jury confusion seems inevitable. *Cf. Equal Employment Opportunity Commission v. Gear Petroleum, Inc.*, 948 F.2d 1542, 1546 (10th Cir.1991) ("[T]he risks of prejudice and confusion entailed in receiving settlement evidence are such that often ... the underlying policy of Rule 408 require [s] exclusion even when a permissible purpose can be discerned"). Here, the potential for unfair prejudice and jury confusion far outweighs the probative value of evidence concerning settlement negotiations.

For the foregoing reasons, Plaintiff Southwest Nurseries' Amended Motion to File a Supplemental Pleading, dated March 13, 2003, is DENIED.