Barbara McKENZIE *v.* TOM GIBSON FORD, INC.

87-363 749 S.W.2d 653

Supreme Court of Arkansas
Opinion delivered May 2, 1988

*Jimmie G. Dunlap*, for appellant.

*Rieves & Mayton*, by: *Elton A. Rieves IV*, for appellee.

STEELE HAYS, Justice. Barbara McKenzie filed this action for conversion against Tom Gibson Ford, Inc., claiming compensatory and punitive damages for the alleged conversion of a check for $500 intended as a down payment on the purchase of a truck. At the close of Ms. McKenzie's case, Gibson asked for a directed verdict on the grounds that Ms. McKenzie had failed to make a prima facie showing of conversion, had failed to prove conduct by

Gibson which would entitle her to punitive damages and had failed to show that she suffered compensatory damages. The motion was denied, but at the close of the case, Gibson renewed its motion, and a directed verdict for the defendant was granted.

Ms. McKenzie has appealed, alleging three points of error: 1) The trial court erred in directing a verdict in favor of Gibson on the issue of damages; 2) the trial court erred in directing a verdict on the issue of punitive damages; and 3) the trial court erred in denying a motion in limine. We agree with the first two points.

Stating the facts most favorably to Ms. McKenzie, against whom the verdict was directed, in January, 1986, she visited Tom Gibson Ford as a prospective purchaser. The truck she liked had been sold but a salesman, Mr. Graham, offered to find one to her liking and he took a credit application and a check for $500 as "earnest money" to serve as a down payment. The understanding was that Ms. McKenzie's check would be returned to her "if the deal fell through."

A few days later Mr. Graham called Ms. McKenzie to tell her she would need $1,500 rather than $500 as a down payment and after thinking it over a day or two she decided to look elsewhere. She asked that her check be returned and Mr. Graham promised to mail it that day.

When the check was not forthcoming Ms. McKenzie inquired at her bank and discovered that the check had been presented and paid to Ford Motor Credit Company and applied to an account of her son, whose note she had co-signed. One of the installments was some fourteen days delinquent at that point in time.

Ms. McKenzie testified she contacted Mr. Graham and Mr. Murray, the credit manager. She said she was treated rudely and her requests for assistance in recovering her $500 were rejected. She was told, she said, to get herself a lawyer and Mr. Murray suggested to her that her son had intercepted the check and delivered it to Ford Motor Credit. This testimony was disputed by Messrs. Graham and Murray. Mr. Graham insisted he mailed

the check to Ms. McKenzie. Neither witness had any explanation for how the check came into the hands of Ford Motor Credit. When Gibson refused to refund her deposit, Ms. McKenzie filed suit for conversion seeking compensatory and punitive damages.

I

*The Directed Verdict on Compensatory Damages*

■ Before dealing with the merits of Point I, we must dispense with a contention by Gibson that Ms. McKenzie has failed to assign error to the directed verdict on the issue of conversion. The problem exists, we believe, because it is not at all clear whether the trial court in the end was ruling that the plaintiff had failed to prove conversion or, having proved conversion, failed to prove that she was legally damaged as a result. At the close of the plaintiff's case the trial court properly denied a motion for a directed verdict on the issue of conversion and at the close of the defendant's case the motion was renewed. During a lengthy discussion the trial court clearly recognized that a factual issue existed as to conversion. He ruled unequivocally on the matter of punitive damages, but never clearly on conversion, and we resolve that doubt in favor of the party against whom the verdict was directed. There is no indication the appellee has been misled by the appellant's points of error and we are unwilling to rule on an ambiguous record that Ms. McKenzie has abandoned the issue of conversion, which would render the appeal meaningless.

■ The motion for a directed verdict was grounded on an absence of proof that Gibson converted Ms. McKenzie's funds to its own use. It is not essential to conversion that it be for the use of the alleged converter. Conversion is any distinct act of dominion wrongfully exerted over property in denial of, or inconsistent with, the owner's right. *First National Bank of Brinkley* v. *Frey*, 282 Ark. 339, 668 S.W.2d 533 (1984); *Thomas* v. *Westbrook*, 206 Ark. 841, 177 S.W.2d 931 (1949). "The conversion need not be a manual taking *or for the defendant's use*: if the defendant exercises control over the goods in exclusion, or defiance, of the

plaintiff's right, it is a conversion, *whether it is for his own use or another's use.*" (Our italics). *Big A Warehouse Distributors, Inc. v. Rye Auto Supply, Inc.*, 19 Ark. App. 286, 719 S.W.2d 716 (1986). "Perhaps the most common way in which conversion is committed is by an unauthorized transfer or disposal of possession of the goods to one who is not entitled to them." *Prosser and Keeton on the Law of Torts*, 5th Edition § 15 p. 92.

 Gibson Ford maintains that because the $500 check was applied to the reduction of an indebtedness for which Ms. McKenzie was liable, she sustained no damage as a matter of law. We reject the proposition. Certainly, as the trial court observed, there was a factual dispute as to whether Gibson returned Ms. McKenzie's check to her or delivered it to Ford Motor Credit and that issue was for the jury to settle. We need not decide whether Ms. McKenzie's liability to Ford Motor Credit Company was as a borrower or a guarantor, as in either event, Gibson had no right to deliver her check to Ford Credit in direct violation of the understanding that the check would be returned to her. Gibson has produced no authority supporting the premise that a tortfeasor can escape liability as a converter because the proceeds of his conversion are disposed of in a manner that may ultimately benefit the owner.

We believe the weight of authority is to the contrary and is in accord with our holding in *Roach v. Rector*, 93 Ark. 521, 123 S.W. 399 (1909). There, Roach, a creditor of Rector, converted goods belonging to Rector, sold them and applied the proceeds to Rector's indebtedness. On appeal we affirmed a judgment for Rector for conversion, holding that the creditor's action was impermissible, her recourse being by legal process rather than the commission of a tort.

The exclusive right of an owner of property to decide how he will allocate his funds among obligees was expressed cogently in the early case of *Northrup v. McGill*, 27 Mich. 234 (1873), cited by *Roach v. Rector*, *supra*, and more recently by a California appellate court, *Dakota Gardens Apt. Investors v. Pudwill*, 142 Cal. Reptr. 126, 75 Cal. App. 3d 346 (1977):

> In general, when there is no fraud, and when the law does not forbid, a man may dispose of his own property according to his own ideas of propriety. If he is indebted by note to different parties, he may apply his property to the payment of one, and refuse to apply it to the payment of another, and he may lawfully discriminate in this way, though in doing so he ignores the stronger moral claim resting upon him. This results from the supreme dominion which is involved in the absolute ownership of property.

Nor do we regard *Roach* v. *Rector* and the case at bar as distinguishable because Roach was a creditor, whereas Gibson was not. If a creditor cannot escape liability for conversion by applying the proceeds to reduce the indebtedness of the owner, we can see no rational reason why Gibson is entitled to greater deference under the law than a creditor. For that matter, Gibson was not disinterested in the indebtedness to Ford Motor Credit involving Ms. McKenzie's son, as Ford Motor Credit had the right of recourse against Gibson in the event of default.

## II

### *The Directed Verdict on Punitive Damages*

Tom Gibson Ford submits that the recovery of punitive damages is dependent on proof that it intentionally converted Ms. McKenzie's money, and, it claims, the record is devoid of evidence that Gibson intentionally gave her check to Ford Motor Credit. *Oaklawn Bank* v. *Baldwin*, 289 Ark. 79, 709 S.W.2d 91 (1986). But there was evidence that a check in the possession of Tom Gibson Ford came into the hands of Ford Motor Credit Company and the jury could infer that the delivery to Ford Motor Credit was deliberate. That being so, it was for the jury to decide whether punitive damages should be awarded. *Shepherd* v. *Looper*, 293 Ark. 29, 732 S.W.2d 150 (1987); *Williams* v. *O'Neal Ford, Inc.*, 282 Ark. 362, 668 S.W.2d 545 (1984); *Olson* v. *Riddle*, 280 Ark. 535, 659 S.W.2d 759 (1983). *Ford Motor Credit Company* v. *Herring*, 267 Ark. 201, 589 S.W.2d 584 (1979). There was also testimony that Gibson refused Ms. McKenzie's request for assistance in recovering her money, which, if believed by the jury, would support a conclusion that the

check was deliberately delivered to Ford Motor Credit. It was, therefore, error to direct a verdict on the issue of punitive damages.

## III

### *Motion In Limine*

Finally, Ms. McKenzie relies on A.R.E. Rule 408 in contending it was error for the trial court to deny a motion in limine to prevent the introduction of proof that approximately five months after the complaint was filed, Tom Gibson Ford asked Ford Motor Credit to refund Ms. McKenzie's check for $500, that Ford Motor Credit sent Gibson a check for $500 which was forwarded to Ms. McKenzie's counsel but was refused. The trial court first upheld the motion but later denied it and permitted the proof to come in over objection.

The law generally permits the evidence of a return of the property to its owner in mitigation of damages for conversion, but only when certain circumstances are present. For one thing, the owner must have accepted the return of the goods [*Plummer v. Reevers*, 83 Ark. 10, 102 S.W. 376 (1907); *Norman v. Rogers*, 29 Ark. 365 (1874)], whereas the tender was rejected in this case. Also the original conversion must have occurred by mistake, (*Restatement of Torts*, 2d § 922) and the return must occur promptly after discovery of the mistake, (*id.*) and before the commencement of an action for conversion (18 Am.Jur.2d, *Conversion* § 126, p. 236).

Tom Gibson Ford argues such evidence is admissible under Rule 408 if offered "for another purpose, such as proving bias, or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Among the reasons given by Gibson to support introduction was that the evidence showed a lack of intentional, willful or wanton conduct, a factor relevant to the issue of punitive damages.

A.R.E. Rule 408 is not a blanket prohibition against the admission of all evidence concerning offers to compromise. The rule prohibits the introduction of such evidence when the evidence is offered to prove "liability for, invalidity of, or amount

of the claim or any other claim." It does not prohibit such evidence when introduced for any other reason. *Cf.* 2 D. Louisell & C. Mueller, *Federal Evidence* §§ 170, 172 (discussing Fed. R. Evid. 408, which contains language very similar to that of our rule). Since this evidence was offered for a purpose other than those prohibited, Rule 408 does bar its introduction. That does not mean that the evidence is automatically admissible. Relevance must still be determined under A.R.E. Rule 401 and admissibility under A.R.E. Rules 402 and 403. *Cf.* 2 D. Louisell & C. Mueller, *supra*, § 172 (discussing the similar federal rules). Here, as we have noted, the offer occurred after the institution of the suit, a factor which brings it under suspicion. If this were a review *de novo*, perhaps we should rule under these facts the probative value was so minimal that it was substantially outweighed by the danger of unfair prejudice, and the evidence should have been excluded under Rule 403. However, "[t]he balancing of probative value against prejudice is a matter left to the sound discretion of the trial judge and his decision on such a matter will not be reversed absent a manifest abuse of that discretion." *Wood* v. *State*, 20 Ark. App. 61, 65-66, 724 S.W.2d 183, 185 (1987).

REVERSED and REMANDED.