Tony SMITH *v.* Jerry THORNBURG

92-528                                    841 S.W.2d 616

Supreme Court of Arkansas
Opinion delivered November 10, 1992

*Odom, Elliott & Winburn,* by: *Bobby Lee Odom* and *J. Timothy Smith,* for appellant.

*Parker, Settle & McCarty,* by: *Patrick McCarty,* for appellee.

TOM GLAZE, Justice. In this negligence action, Tony Smith, a pawn shop owner, was sued by Jerry Thornburg, who alleged he had left his pickup truck with Smith to secure a loan in the amount of $365.00. Thornburg further asserted that, in obtaining the loan, he parked his vehicle on Smith's lot, locked his truck's doors and left his keys and title to the truck with Smith as collateral. Smith gave Thornburg a claim ticket that provided Smith was not responsible for goods lost in pawn. Two weeks later, Thornburg drove by Smith's lot and noticed his truck was missing; he stopped and asked Smith where the truck was. Smith, unaware the truck had been removed, advised Thornburg to notify the police that the vehicle had been stolen. The keys and title to Thornburg's truck were still in Smith's safe. After notifying the police, Thornburg filed suit against Smith in municipal court which returned a civil judgment in favor of Thornburg for $730.00 plus $65.45 in costs.

Smith appealed to the Sebastian County Circuit Court. After a nonjury trial, the trial judge stated that, when comparing the negligence of the respective parties, he found in Thornburg's favor, thus, ordering Thornburg's loan, interest and other related charges cancelled and adjudging Smith to pay Thornburg $150.00 in damages and $63.45 in costs. In this appeal, Smith argues Thornburg failed to show that Smith breached his duty of

ordinary care. We agree.

■■ In *Howard's Laundry & Cleaners* v. *Brown*, 266 Ark. 460, 585 S.W.2d 944 (1979), we discussed negligence and its applicability to bailment situations as the one here as follows:

> The rule in bailment cases is that the bailee may overcome the inference of negligence arising against it because of delivery in good condition and return in damaged condition by telling all that it knows of the casualty, and that it exercised ordinary care in all that it did with respect to the vessel. This burden, unlike that of persuasion which rested at all times on [the bailor], simply required [the bailee] to go forward with evidence sufficient to show that it had no more knowledge of the cause of the casualty than was available to the [bailor] and that it exercised ordinary care. At this juncture the burden of going forward would shift back to [the bailor] to ultimately persuade the trier of facts of negligence on the part of [bailee] proximately causing the casualty.

In applying the above rule to the facts before us, Thornburg's only evidence was that he parked his truck on Smith's lot, locked the truck and took his keys and title into Smith who loaned Thornburg the money. Thornburg had previously pawned a vehicle, and he said that he guessed the same standard of care or practice in pawning vehicles was followed in Arkansas. He figured his truck would stay on Smith's lot unless Smith got more automobiles and had to move Thornburg's. Thornburg offered no further evidence.

Smith testified that he had always put pawned cars on his parking lot, and he never told his customers that their vehicles would be taken anywhere else. Smith said that all he can do to protect the cars is to have them locked and placed on his lighted lot. Smith further stated that other pawn brokers in the area do the same thing with their pawned cars. Smith testified that he informs each person that pawns a car that he cannot be responsible for the customer's vehicle. This information is also printed on the pawn claim ticket. Smith stated that he has owned the pawn shop for twenty years, had pawned probably a hundred vehicles and had never had one stolen. Smith had no employee at his pawn shop at night.

Another pawn shop owner, Thomas Ray Lester, testified that when he makes loans on vehicles, he has the customer park his or her car on his lot, tells the customer to lock and secure the vehicle, and puts the title and keys in his vault. Lester testified that he did not have anyone at his pawn shop at night. Further, he testified without objection that to the best of his knowledge other pawn shops in the area follow this same standard of care.

■ In sum, Smith presented unrebutted evidence that the procedure he followed in this pawn transaction with Thornburg was the standard or reasonable procedure and ordinary care followed by others in his business. Thornburg actually appeared to agree, and never offered any proof to show his truck was unsafe in the manner or in the lot he left it. Nor did Thornburg attempt to show Smith's lot was in an unsafe location or, for safety reasons, in need of a fence. *See, e.g.*, Annotation, *Pawned or Pledged Property — Theft*, 68 ALR 2d 1259, 1261, § 2, § 4(b) (1959).

Because Thornburg failed to show Smith breached his duty of ordinary care, we must reverse.