OZARK AUTO TRANSPORTATION, INC., an Arkansas Corporation *v.* Vernie D. STARKEY

96-873                                                937 S.W.2d 175

Supreme Court of Arkansas
Opinion delivered February 10, 1997

*Scott E. Smith*, for appellant.

*Gocio, Dossey & Reeves*, by: *Samuel M. Reeves*, for appellee.

DONALD L. CORBIN, Justice. Appellant Ozark Auto Transportation, Inc., appeals the judgment of the Washington County Circuit Court holding that Appellant breached its duty of ordinary care to Appellee and awarding Appellee damages in the amount of $3,858.43. Jurisdiction is properly in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(15) (as amended per curiam July 15, 1996), as this case presents questions about the law of torts. In support of its appeal, Appellant argues that there was insufficient evidence presented below to support the verdict against Appellant and the amount of damages awarded to Appellee, and that the trial court erred in allowing Appellee to impeach the testimony of one of Appellant's agents with portions of an alleged letter of settlement. We find no error and affirm the judgment.

The testimony presented at the nonjury trial revealed the followings facts. Appellee had employed the services of Appellant to transport a car from Mountain Home, Arkansas, to the Port of Baltimore, Maryland, so that the car could be shipped to Appellee in Germany. Appellee made the transportation arrangements with Marvin Creamer, a salesman for Appellant. The agreement was that Appellant was to deliver the car to E.H. Harms at the marine terminal in Baltimore, where it would be shipped by another company to Germany. When the car did not arrive in Germany on time, Appellee talked to Marvin, who stated that a

radiator and a gas tank that were stored in the trunk of a 1940 Mercury belonging to a Mr. Taylor, which was also being transported by Appellant and was located in the upper deck of the transport truck, had fallen onto Appellee's car, damaging the hood and breaking the windshield. When the car finally arrived in Germany, Appellee reported that the hood was badly dented and that the car's climate-control system was full of glass splinters, apparently from the broken windshield. The windshield had already been replaced, upon Appellant's request, before shipment overseas. Appellee took photographs of the damage and had the car repaired in Germany. Appellee presented the photographs and documents to the trial court including a copy of a check in the amount of $3,858.43 that Appellee stated was written for the repairs to the car.

Appellant's vice-president, Lance Creamer, told the trial court that he had been contacted by an assistant concerning the damage to Appellee's car, and that he had, in turn, instructed the assistant to get an estimate on the damage and to have the windshield replaced, as he knew that the car could not be shipped overseas without a windshield. Lance Creamer denied knowledge concerning the cause of the damage to Appellee's car, but conceded that if the hood had been dented and the windshield had been broken when the car was picked up by his driver, such damage would have been noted on the pre-transport inspection conducted by his driver. Lance Creamer also stated that Appellee actually talked to him, rather than Marvin Creamer, concerning the damage to his car and that he never told Appellee anything about parts falling out of the trunk of a 1940 Mercury and onto Appellee's car. Marvin Creamer likewise denied ever speaking to Appellee about the damage to the car.

Lance Creamer initially denied knowledge as to whether Appellee's car was damaged during transport. Appellee's counsel then confronted Lance Creamer with a letter written by him to Appellee, which referred to "damages caused during transport while the car was in our care." Lance Creamer admitted that he had written the letter to Appellee and that it was safe to assume that the car had been damaged when it had been dropped off at

the port in Baltimore, due to the fact that he had obtained an estimate of the damages at that time.

Appellant's transport driver, Mark Smith, informed the trial court that he had performed an inspection on Appellee's car prior to transporting the car to Baltimore. Smith indicated that the only damage noted on his inspection was a "touch-up" ding below the left door handle and jack indentations on the bottom of the car's frame. Smith stated that no damage had been done to the car while it was in his care prior to being delivered to the port in Baltimore. Smith conceded that when he arrived at the port, he did not deliver the car to E.H. Harms as instructed; instead, he left the car, unlocked and with the keys in it, just inside the main gate of the port without having anyone sign for receipt of the vehicle.

The trial court ruled that Appellee had met his burden of proof by a preponderance of the evidence that the damage to his car occurred while it was in Appellant's care and possession. The trial court found further that the facts presented created a bailment situation, and that in such a situation where the bailee returns damaged goods that were not damaged when received, an inference of negligence arises and the bailee must then go forward with evidence that he exercised ordinary care in handling the goods. In applying the law to the facts, the trial court determined that Appellant had not overcome the inference of negligence arising against it and that Appellee was entitled to damages in the amount of $3,858.43, the actual costs of the repairs. The trial court found it significant that Lance Creamer had instructed his assistant to have an estimate done for the repairs and to have a windshield installed, all the while Appellant's agents maintained that the car was not damaged ·when it was delivered to Baltimore. Appellant filed a posttrial motion and brief asking the court to reconsider its judgment, but the motion was denied. This appeal followed.

### Sufficiency of the Evidence

For its first point for reversal, Appellant argues that the trial court's verdict against it as well as the amount of the damages awarded to Appellee were clearly against the preponderance of the evidence presented at trial. We do not agree.

■ We have long held that we will not reverse the trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. ARCP Rule 52(a); *Farm Bureau Mut. Ins. Co. v. David*, 324 Ark. 387, 921 S.W.2d 930 (1996). Due regard shall be given to the superior position and opportunity of the trial court to judge the credibility of the witnesses, ARCP Rule 52(a), and where there are disputed matters of fact, such as in the case at bar, "[i]t is axiomatic that decisions as to the credibility of the witnesses are to be made by the trier of fact," in this case the court sitting without a jury. *Silvey Cos. v. Riley*, 318 Ark. 788, 791, 888 S.W.2d 636, 638 (1994).

■ ■ We note at the outset that the trial court correctly applied the principles of law as to bailments, and that Appellant does not contest the trial court's characterization of the relationship as one of bailment. Generally, where a bailee returns goods in a damaged condition which were not so damaged when received, an inference of negligence applies. *Howard's Cleaners v. Munsey*, 289 Ark. 22, 708 S.W.2d 628 (1986). The bailee may then go forward with proof that he exercised ordinary care in handling the bailed goods. *Id.* In *Smith v. Thornburg*, 311 Ark. 49, 841 S.W.2d 616 (1992), this court cited its prior holding in *Howard's Laundry & Cleaners v. Brown*, 266 Ark. 460, 463, 585 S.W.2d 944, 945-46 (1979):

> The rule in bailment cases is that the bailee may overcome the inference of negligence arising against it because of delivery in good condition and return in damaged condition by telling all that it knows of the casualty, and that it exercised ordinary care in all that it did with respect to the vessel. This burden, unlike that of persuasion which rested at all times on [the bailor], simply required [the bailee] to go forward with evidence sufficient to show that it had no more knowledge of the cause of the casualty than was available to the [bailor] and that it exercised ordinary care. At this juncture the burden of going forward would shift back to [the bailor] to ultimately persuade the trier of facts of negligence on the part of [bailee] proximately causing the casualty.

*Smith*, 311 Ark. at 51, 841 S.W.2d at 616-17.

Here, the trial judge specifically stated that he could see no reason for Appellee to lie concerning the damage to the car or the conversation with Marvin Creamer indicating that some parts had fallen out of the trunk of another car being transported above Appellee's car. The trial judge also found it significant that Appellant's driver would take such care in inspecting the car for damage *before* transporting it to Baltimore and then turn around and leave the car unattended inside the port's gate without ever having had anyone at the port sign for receipt of the car or verify that the car had not been damaged during transport. Additionally, the trial judge rejected Appellant's theory that the car may have been damaged during the overseas shipment, reasoning that if that had been the case, it would not have been necessary for Appellant's agents to have arranged to have the windshield replaced before overseas shipment. Moreover, the trial court reasoned that it was not believable that Appellant's agents would spend almost $700.00 to have the car's windshield replaced out of the kindness of their hearts, when they were only going to make $500.00 for transporting the car.

Based upon the foregoing, as well as the previously recited trial testimony, we conclude that the trial court's decision was not clearly erroneous or clearly against the preponderance of the evidence. Furthermore, as the trial judge was presented with documentary evidence by Appellee concerning the cost of the repairs to the car, we cannot conclude that the award of $3,858.43 damages, the exact amount reflected on the check written by Appellee, was not supported by the evidence. The fact that Appellant claims the repairs could have been done less expensively is of little consequence for purposes of our review, as the trial court's award of damages was not clearly against the preponderance of the evidence.

### A.R.E. Rule 408

For his remaining point for reversal, Appellant contends that it was error for the trial court to permit Appellee's counsel to impeach Lance Creamer's testimony with a letter written by Creamer to Appellee in an attempt to settle Appellee's lawsuit. In support of this contention, Appellant asserts that A.R.E. Rule 408

prohibits the use of letters containing offers of settlement or compromise between litigants for the purpose of establishing liability. Appellee responds that under Rule 408 such letters may be used to impeach the credibility of a witness who testifies inconsistently with what he wrote in the letter.

Initially, we note our agreement with the trial court's interpretation of the rule, as Rule 408 is not a blanket prohibition against the admission of all evidence concerning offers to compromise. *McKenzie v. Tom Gibson Ford, Inc.*, 295 Ark. 326, 749 S.W.2d 653 (1988). Instead, the rule only prohibits the introduction of such evidence when the evidence is offered to prove "liability for, invalidity of, or amount of the claim or any other claim." *Id.* at 332-33, 749 S.W.2d at 657 (quoting A.R.E. Rule 408). Rule 408 does not prohibit such evidence when introduced for any other reason. *Id.* Such evidentiary rulings are within the sound discretion of the trial court and will not be set aside by this court absent a manifest abuse of that discretion. *Id.*

Based upon the abstract of the record, we are not convinced that the trial court abused its discretion in allowing Appellee's counsel to impeach the testimony of Lance Creamer with the statements he made in the letter written to Appellee, even if the letter was one in which a settlement or compromise was offered by Appellant. We are precluded, however, from conducting a meaningful review of the merits of this issue without having the benefit of knowing the actual contents of the letter, which Appellant has failed to abstract. There is no indication from the abstracted portion of Lance Creamer's testimony, other than the argument of Appellant's counsel, that such letter actually contained any discussion of settlement or compromise.

Because Appellant has failed to abstract this crucial document, we cannot conclude that the trial court erred in allowing its use in the impeachment of Lance Creamer. It is well settled that it is the appellant's burden to produce a record demonstrating error on appeal. *Winters v. Elders*, 324 Ark. 246, 920 S.W.2d 833 (1996). Appellant has failed to meet this burden and, thus, we affirm.