SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| MICHAEL HERNANDEZ and IDA HERNANDEZ, husband and wife,<br><br>        Plaintiffs-Appellants,<br><br>        v.<br><br>STATE OF ARIZONA, ARIZONA STATE PARK SERVICE,<br><br>        Defendants-Appellees. | Arizona Supreme Court<br>No. CV-01-0437-PR<br><br>Court of Appeals<br>Division One<br>No. 1 CA-CV 01-0008<br><br>Maricopa County<br>Superior Court<br>No. CV 98-20736<br><br>**O P I N I O N** |

_____

Appeal from the Superior Court of Maricopa County
Honorable Edward O. Burke, Judge
AFFIRMED

_____

Opinion of the Court of Appeals, Division One
201 Ariz. 336, 35 P.3d 97 (2001)
VACATED

_____

Janet Napolitano, Attorney General                         Phoenix
   By      Daniel P. Schaack, Assistant Attorney General
Attorney for the State of Arizona

Goldberg & Osborne                                         Tucson
   By      Joel T. Ireland
Attorney for Michael and Ida Hernandez

_____

M c G R E G O R, Vice Chief Justice

¶1     We granted review to address whether Rule 408, Arizona Rules of Evidence (Ariz. R. Evid.), prohibits admission of evidence contained in a notice of claim filed pursuant to Arizona Revised Statutes (A.R.S.) section 12-821.01 (Supp. 2001) when the evidence is introduced to impeach a party's credibility. We conclude that, assuming Rule 408 applies, the rule would not preclude the use of impeachment materials contained in a notice of claim.

## I.

¶2     Hernandez and his family arrived at the Patagonia Lake State Park at dusk on Friday, August 29, 1997. Hernandez and his son attempted to buy bait at the Patagonia Lake Camp store. The store employee informed them that only the marina store sold bait.

¶3     The camp store was located on a hill above the marina store. Rather than drive to the marina store, Hernandez and his son tried to reach the store by crossing a parking lot area adjacent to the camp store, stepping over a cable fence supported by posts three feet high, and walking down a very steep hill without any path or trail. Unbeknownst to Hernandez, the hill ended at a retaining wall with a fourteen-foot drop-off to the road below. In the approaching darkness, Hernandez stepped off the retaining wall and fell to the road below. The fall knocked out several of Hernandez's front teeth and fractured his left wrist.

¶4      Pursuant to A.R.S. section 12-821.01,[1] Hernandez filed a notice of claim with the State on September 15, 1997.  The notice described the facts surrounding Hernandez's fall as well as the amount Hernandez claimed for his injuries.

¶5      After filing the notice of claim, Hernandez brought a civil action against the State.  In their joint pre-trial statement, Hernandez and the State stipulated to the facts underlying Hernandez's claim.  At trial, the State introduced portions of the notice of claim to impeach Hernandez's credibility because the facts in the notice differed from Hernandez's deposition and trial testimony.[2]  Hernandez objected, arguing that

---

[1]      The statute requires that:

> Persons who have claims against a public entity . . . shall file claims with the person or persons authorized to accept service for the public entity . . . .  The claim shall contain facts sufficient to permit the public entity . . . to understand the basis upon which liability is claimed.  The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount.  Any claim which is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.

A.R.S. § 12-821.01.A.

[2]      The State stipulated to redaction of Hernandez's statement defining the specific amount needed to settle the claim.

3

Rule 408[3] barred its use.  The trial court overruled Hernandez's objection and admitted the redacted notice of claim for impeachment purposes.  At the end of a five-day trial, the jury returned a verdict in favor of the State.

¶6        The court of appeals upheld the trial court's evidentiary ruling.  In its majority opinion, the court concluded that no disputed claim exists when a party files a notice of claim, and a notice of claim therefore cannot constitute an offer to compromise excluded by Rule 408.  *Hernandez v. State*, 201 Ariz. 336, 339-40 ¶¶ 10-16, 35 P.3d 97, 100-01 (App. 2001).  Dissenting, Judge Voss urged that Rule 408 always requires exclusion of a notice of claim. *Id*. at 342 ¶¶ 27-28, 35 P.3d at 103 (Voss, J., dissenting).

¶7        We accepted review and exercise jurisdiction pursuant to

---

[3]    Rule 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Ariz. R. Evid. 408.

4

Article VI, Section 5.3 of the Arizona Constitution and Rule 23 of the Arizona Rules of Civil Appellate Procedure.

## II.

### A.

¶8        We begin by assuming, for purposes of this opinion, that a notice of claim constitutes an offer of compromise under Rule 408.  The plain language of Rule 408 does not exclude evidence offered for the purpose of impeaching a party's credibility.  The rule states, in pertinent part, that offers to compromise are "not admissible to prove liability for or invalidity of the claim or its amount."  Ariz. R. Evid. 408.  Thus, although evidence originating from compromise negotiations may not be admitted to prove liability for or invalidity of a claim, the rule does not prevent the use of such evidence in all instances.

¶9        In fact, Rule 408 expressly "does not require exclusion when the evidence is offered *for another purpose*, such as proving bias or prejudice of a witness."  *Id*. (emphasis added).  The "such as" language indicates that a party may introduce evidence presented in offers to compromise for purposes other than proving bias or prejudice, so long as the evidence is not used to prove liability for or invalidity of a claim.  Evidence admitted to impeach party credibility, like evidence admitted to prove bias or prejudice, does not prove liability for or invalidity of a claim.  Thus, the plain language of Rule 408 does not prohibit admission of

5

evidence disclosed in compromise negotiations for impeachment purposes.

¶10      Other courts have interpreted the plain language of Rule 408 to permit the admission of impeachment evidence. In interpreting Arizona's evidentiary rules, we look to federal law when our rule is identical to the corresponding federal rule, as is true for Rule 408.[4] *State v. Green*, 200 Ariz. 496, 498 ¶ 10, 29 P.3d 271, 273 (2001) ("When interpreting an evidentiary rule that predominantly echoes its federal counterpart, we often look to the latter for guidance.").

¶11      Most federal circuit courts agree that Rule 408 does not bar evidence from compromise negotiations if the evidence will be used for impeachment purposes. For instance, the Ninth Circuit Court of Appeals upheld the admission of an indemnity agreement made during compromise negotiations for purposes of attacking the credibility of witnesses, notwithstanding Rule 408, because that purpose is "distinct from proving liability." *Brocklesby v. United States*, 767 F.2d 1288, 1292-93 (9th Cir. 1985). Similarly, recognizing that Rule 408 prohibits an offer of compromise to prove liability for or invalidity of a claim, the Eighth Circuit Court of Appeals held that using an offer to compromise to rebut witness testimony is "permissible under [Rule 408]" because "[t]he rule . . . 'does not require exclusion when the evidence is offered for

---

[4]      See Fed. R. Evid. 408.

another purpose.'" *Cochenour v. Cameron Sav. & Loan, F.A.*, 160 F.3d 1187, 1190 (8th Cir. 1998)(quoting Fed. R. Evid. 408). *See also Wyatt v. Sec. Inn Food & Beverage Inc.*, 819 F.2d 69, 71 (4th Cir. 1987) (The court held that Rule 408 "need not prevent a litigant from offering evidence [from compromise negotiations] when he does not seek to show the validity or invalidity of the compromised claim." The court, however, excluded the offered evidence because the court did "not see . . . how [the] evidence was relevant."); *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982) ("In this case, the 'settlement' evidence was properly presented below to rebut defendants' assertion that they had not been aware of the issues until the suit was filed."). *But cf. Williams v. Chevron U.S.A., Inc.*, 875 F.2d 501, 504 (5th Cir. 1989) (upholding the trial court's exclusion of settlement negotiations introduced for impeachment purposes because "it [was] undoubtedly possible that the jury would have confused [the impeachment] purpose for that precluded by Rule 408") *cited with approval in EEOC v. Gear Petroleum, Inc.*, 948 F.2d 1542, 15 46 (10th Cir. 1991).

¶12     State courts, including the Arizona Court of Appeals, also express general agreement that Rule 408 does not preclude the use of impeachment evidence derived from compromise negotiations. Considering the admission of a settlement letter for impeachment purposes, the Arkansas Supreme Court held that Rule 408 did not

7

exclude a letter written in an attempt to settle a lawsuit because "Rule 408 is not a blanket prohibition against the admission of all evidence concerning offers to compromise.  Instead, the rule only prohibits the introduction of such evidence when the evidence is offered to prove 'liability for, invalidity of, or amount of the claim or any other claim.'"  *Ozark Auto Transp., Inc. v. Starkey*, 937 S.W.2d 175, 178 (Ark. 1997)(citation omitted)(quoting Ark. R. Evid. 408).  Similarly, the Idaho Supreme Court upheld "the use of statements contained in settlement negotiations for the purpose of impeaching witnesses who give contrary testimony" at trial. *Davidson v. Beco Corp.*, 753 P.2d 1253, 1256 (Idaho 1987).  *See also DeForest v. DeForest*, 143 Ariz. 627, 633, 694 P.2d 1241, 1247 (App. 1985) (holding that a husband's signature agreeing to a proposed divorce decree "was properly admitted for the limited purpose of showing his knowledge of the proposed . . . spousal maintenance award" when the husband testified at trial that he had never been aware of the award); *El Paso Elec. Co. v. Real Estate Mart, Inc.*, 651 P.2d 105, 109 (N.M. Ct. App. 1982) (holding that evidence from compromise negotiations "used to impeach, not to establish the amount of the claim . . . comes within 'another purpose' [under Rule 408], and is admissible").

**B.**

¶13      The public policy underlying both the Arizona and the federal rules of evidence favors allowing courts to admit evidence

presented during compromise negotiations for impeachment. The purpose of the rules of evidence is to promote the "growth and development of the law of evidence to the end that *the truth may be ascertained* and proceedings justly determined." Fed. R. Evid. 102 (emphasis added); Ariz. R. Evid. 102 (emphasis added). Moreover, "[t]he purpose of Rule 408 is to foster 'complete candor' between parties, not to protect false representations." 23 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure: Evidence* § 5314, at 286 (1980).

¶14 Excluding evidence offered solely to impeach a party's credibility does not encourage complete candor. To the contrary, that approach fails to hold parties accountable for setting forth one version of the facts to obtain a settlement and describing another version at trial. Claimants should present their claims truthfully. Lawyers should not lie on behalf of clients in presenting a claim. Allowing the use of evidence from compromise negotiations for impeachment facilitates Rule 408's goal of encouraging truthfulness by putting parties on notice that they should not falsely represent claims, either during compromise negotiations or at trial.

¶15 Of course, the admission of impeachment evidence taken from a notice of claim remains subject to Rules 401, 402 and 403, Ariz. R. Evid. Thus, impeachment evidence must be relevant under Rules 401 and 402, and unfair prejudice must not substantially

9

outweigh its probative value. *See Graber v. City of Ankeny*, 616 N.W.2d 633, 640-41 (Iowa 2000) (holding evidence disclosed during settlement not admissible because the evidence was not relevant to show bias); *Simmons v. Small*, 986 S.W.2d 452, 455 (Ky. Ct. App. 1998) (refusing to allow settlement evidence for purposes of impeachment because "[t]here is no question that the evidence . . . was prejudicial"); *Stam v. Mack*, 984 S.W.2d 747, 752 (Tex. App. 1999) (precluding evidence of settlement agreement because the evidence did not show bias or shifting interest); *Northington v. Sivo*, 8 P.3d 1067, 1069 (Wash. Ct. App. 2000) (excluding evidence of a settlement to prove bias because the evidence "was irrelevant and unfairly prejudicial").[5]

¶16      Because the rules of evidence seek to promote

---

[5]      The dissent expresses concern that juries will use impeachment evidence to determine the validity of a claim. The same concern exists, of course, for all evidence admitted for a limited purpose, and the Rules of Evidence address that concern. Just as Rules 401, 402 and 403 preclude the admission of irrelevant and highly prejudicial impeachment evidence, Rule 105 may be invoked to limit a jury's consideration of impeachment evidence. Ariz. R. Evid. 105 ("When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."). *See also Readenour v. Marion Power Shovel*, 149 Ariz. 442, 450, 719 P.2d 1058, 1066 (1986) ("Rule 105 is mandatory, not discretionary; 'once evidence admissible for one purpose but inadmissible for another is admitted, the trial court *cannot refuse* a requested limiting instruction.'")(quoting *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1185 (5th Cir. 1982)); Joseph M. Livermore et al., 1 *Arizona Practice Law of Evidence* § 105.1, at 28 (4th ed. 2000) ("[N]otwithstanding a Rule 105 limiting instruction, the court would have the discretion to exclude the evidence from the trial altogether under Rule 403.").

truthfulness, and Rule 408 encourages candid compromise negotiations, public policy dictates that evidence obtained in the course of compromise negotiations should be available for impeachment purposes.

## III.

¶17     The facts underlying Hernandez's fall as set forth in the notice of claim differed from the facts to which Hernandez testified prior to and during trial.  Because Hernandez presented inconsistent versions of the facts surrounding his alleged injuries, the State sought to admit factual portions of the notice of claim to impeach Hernandez's credibility.  Significantly, the State did not introduce the notice to prove that it was not liable for Hernandez's fall or to disprove the validity of Hernandez's claim or its amount.  Thus, even if we regard the notice of claim as an offer to compromise under Rule 408, the trial court properly admitted portions of the notice of claim to impeach Hernandez's credibility.

## IV.

¶18     For the foregoing reasons, we vacate the opinion of the Court of Appeals and affirm the judgment of the Superior Court.

_____
                 Ruth V. McGregor, Vice Chief Justice

CONCURRING:

_____
Charles E. Jones, Chief Justice


_____
Rebecca White Berch, Justice


Joseph W. Howard, Judge, dissenting:

¶19        "'[C]ourts have not formulated a consistent, reliable body of doctrine to determine the extent to which [R]ule 408 bars evidence of . . . statements made during [compromise] negotiations' when offered [to impeach a party]."  Fred S. Hjelmeset, *Impeachment of Party by Prior Inconsistent Statement in Compromise Negotiations: Admissibility Under Federal Rule of Evidence 408*, 43 Clev. St. L. Rev. 75, 108 (1995) (brackets added) (footnote omitted) (quoting Wayne D. Brazil, *Protecting the Confidentiality of Settlement Negotiations*, 39 Hastings L. J. 955, 974 (1988)). Not surprisingly then, differences of opinion arise as to the proper impeachment use of statements made in compromise negotiations.  I conclude that a notice of claim filed pursuant to A.R.S. § 12-821.01 is a statement made in compromise negotiations triggering the exclusionary principles of Rule 408, Ariz. R. Evid., 17A A.R.S.  Further, I conclude that impeachment of a plaintiff or defendant with prior inconsistent statements made in compromise negotiations concerning the facts of an accident is not a proper exception to Rule 408.  Such use of those statements does little to

12

foster the truth-seeking process and does far too much to frustrate the policy of encouraging prelitigation settlements. Accordingly, I respectfully dissent.

¶20    The majority chose not to address the issue of whether Rule 408 applies to a notice of claim filed under § 12-821.01 because the majority concludes that Rule 408 does not bar the admission of the prior inconsistent statements in any event. Because I conclude that Rule 408 precludes the use of such statements, I must first analyze whether Rule 408 in fact applies. The state argues, and a majority of the Court of Appeals concluded, that a dispute triggering Rule 408 does not exist when a person files a notice of claim against a public entity or employee because the entity or employee has not yet taken a contrary position. *Hernandez v. State*, 201 Ariz. 336, ¶12, 35 P.3d 97, ¶12 (App. 2001). That construction of Rule 408 is too narrow and overly restricts the policy underlying the rule.

¶21    Section 12-821.01 requires any person who has a claim against a public entity or employee to file a notice of claim within 180 days after the claim accrues. That notice of claim must include "facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed." § 12-821.01(A). It must also contain "a specific amount for which the claim can be settled and the facts supporting that amount." *Id*. The purpose of the notice of claim statute "is to allow the

13

public employee and his employer to investigate and assess their liability, *to permit the possibility of settlement prior to litigation* and to assist the public entity in financial planning and budgeting." *Crum v. Superior Court*, 186 Ariz. 351, 352, 922 P.2d 316, 317 (App. 1996) (emphasis added). Consequently, the notice constitutes a statutorily mandated commencement of compromise negotiations.

¶22 Under the first sentence of Rule 408, evidence of furnishing or offering to furnish, accepting or offering to accept a compromise of a disputed claim "is not admissible to prove liability for or invalidity of the claim or its amount." The Advisory Committee Notes to Rule 408, Fed. R. Evid.,[6] state that the rule is not invoked by instances such as "induc[ing] a creditor to settle an admittedly due amount for a lesser sum," but rather where "the claim [is] disputed as to either validity or amount." *See also Affiliated Mfrs., Inc. v. Aluminum Co. of America*, 56 F.3d 521, 528 (3d Cir. 1995) (dispute requirement covers "both litigation and less formal stages of a dispute," including "an apparent difference of opinion between the parties"); *Dallis v. Aetna Life Ins. Co.*, 768 F.2d 1303, 1307 (11th Cir. 1985); *Schlossman & Gunkelman, Inc. v. Tallman*, 593 N.W.2d 374, 378 (N.D.

---

[6] Because Rule 408, Fed. R. Evid., is the source of Rule 408, Ariz. R. Evid., 17A A.R.S., *see* Historical Notes to Ariz. R. Evid. 408, and the two rules contain identical language, federal authority is instructive. *See State v. Green*, 200 Ariz. 496, ¶10, 29 P.3d 271, ¶10 (2001).

14

1999) (for purposes of evidence rule virtually identical to Rule 408, Ariz. R. Evid., "a claim is disputed if there is a difference in interests or views which the parties are attempting to resolve through compromise negotiations").

¶23        The second sentence of Rule 408 expands the exclusion further, stating:  "Evidence of conduct or statements made in compromise negotiations is likewise not admissible."  The Advisory Committee Notes to the federal rule explain the purpose of the second sentence: "Another effect [of the prior rule] is the generation of controversy over whether a given statement falls within or without the protected area.  These considerations account for the expansion of the rule herewith to include evidence of conduct or statements made in compromise negotiations, as well as the offer or complete compromise itself."  *See also* Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 408.03[5], at 408-13 (2d ed. 2001).

¶24        When Hernandez filed his notice of claim against the state, he began settlement negotiations, as established by § 12-821.01.  *See Crum*, 186 Ariz. at 352, 922 P.2d at 317.  The notice therefore was a statement made in compromise negotiations and inadmissible under the second sentence of Rule 408.

¶25        Moreover, in his notice, Hernandez did not admit the validity of the state's position; that it was not negligent.  And the state certainly has not admitted it was negligent or the amount

15

of Hernandez's claim. *See* Advisory Committee Notes to Fed. R. Evid. 408 (rule triggered by dispute as to validity or amount of claim). When Hernandez filed his notice, it was entirely reasonable to expect the state to challenge the validity or amount of the claim. There was "an apparent difference of opinion." *Dallis*, 768 F.2d at 1307. It was not necessary that the state specifically stake out a position contrary to Hernandez's position. Accordingly, I conclude that when a claimant files a notice of claim pursuant to § 12-821.01, there is a dispute for purposes of Rule 408.[7] Further, a notice of claim is a statement made in compromise negotiations because a person must disclose the basis for liability and the amount for which he or she will settle the claim, and the notice, therefore, triggers the negotiating process. § 12-821.01(A). Thus, the exclusionary principles of Rule 408 apply.

¶26        The remaining issue is whether, under Rule 408, factual statements concerning the facts of an accident made in compromise negotiations are admissible as prior inconsistent statements to impeach a party's testimony. As noted above, statements made in compromise negotiations are not admissible to prove "liability for or invalidity of the claim or its amount." Ariz. R. Evid. 408.

---

[7]        If the notice is not protected by Rule 408, then any initial demand letter would similarly fall outside its protection, despite the perception of practicing attorneys that such letters are statements made in the course of negotiations and protected.

16

But, such statements are admissible for "another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." *Id*.

¶27 Impeachment of a party with a prior inconsistent statement concerning the facts of the accident is not necessary to prove bias and prejudice of a witness. A party is obviously biased by self-interest in favor of its own position. No further proof is necessary. And proof of bias and prejudice is different from impeaching credibility. A witness can lack credibility without bias or be credible even though biased. Moreover, the other examples stated in the rule are completely distinct. Accordingly, impeachment of a party does not come within the examples of exceptions given in Rule 408.

¶28 Additionally, impeachment of a party with a prior inconsistent statement concerning the facts of the case made during compromise negotiations is not the same type of "another purpose" as the examples listed in Rule 408. The examples in Rule 408 are not exclusive but merely illustrative of the types of other purposes that should be excluded from rule's protection. Each example involves issues collateral to the disputed claim. Thus, impeaching a party with a prior inconsistent statement about the facts of a claim is not the same type of "purpose" as the exceptions listed in Rule 408.

17

¶29    Furthermore, "'[t]he clear import of the Conference Report as well as the general understanding among lawyers is that [inconsistent] conduct or statements [made in connection with compromise negotiations] may not be admitted for impeachment purposes.'" *EEOC v. Gear Petroleum, Inc.*, 948 F.2d 1542, 1545 (10th Cir. 1991) (offer of settlement letters "a thinly veiled attempt to get . . .'smoking gun' letters before the jury") (quoting M. Graham, *Federal Rules of Evidence* 116 (2d ed. 1987)) (alterations added by court in *EEOC*).   The bases for this conclusion are twofold.  First, there is a significant danger that a jury will use impeachment evidence substantively, and, in that way, directly contravene Rule 408. *See id*. at 1546.  "'The danger that the evidence will be used substantively as an admission is especially great when the witness sought to be impeached . . . is one of the litigants in the suit being tried.'"  *Id*. (ellipses added) (quoting Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 408[05] at 408-34 (1991)); *see also Schlossman & Gunkelman, Inc.*, 593 N.W.2d at 380 ("When the witness sought to be impeached is also a litigant, the admissibility of statements made during settlement negotiations increases the risk a jury may use the evidence substantively as an admission of liability."); 2 John W. Strong et al., *McCormick on Evidence* § 266, at 186 (5th ed. 1999) ("Use of statements made in compromise negotiations to impeach the testimony of a party, which is not specifically treated

18

in Rule 408, is fraught with danger of misuse of the statements to prove liability, threatens frank interchange of information during negotiations, and generally should not be permitted.").

¶30    In fact, if the credibility of a party is impeached with a prior inconsistent statement concerning the facts of an accident, the only possible relevance of such evidence is to assist the jury in determining "liability for or invalidity of the claim or its amount."  Ariz. R. Evid. 408.  A party's credibility is not a separate issue required to be proven or disproven to prevail on any particular cause of action.  Evidence concerning credibility merely assists the jury in determining which set of facts it should adopt, which will determine liability.  Furthermore, a prior inconsistent statement may be considered as substantive evidence of the facts contained in it.  *See* Ariz. R. Evid. 801(d); Joseph M. Livermore, *Arizona Practice: Law of Evidence* § 608.3(F) (4th ed. 2000).  When the statement is made by a party concerning the facts of the disputed claim, it will necessarily be used by the jury to determine validity of the claim.  And, because here the facts were stipulated, the credibility of the plaintiff was only relevant to determine the amount of his damage, another purpose specifically excluded by Rule 408.

¶31    The second basis for concluding that statements concerning the facts of the accident made in compromise negotiations are not admissible to impeach a party is that a

19

contrary conclusion undermines the purpose of Rule 408, which is to facilitate settlements by encouraging "free communication between parties." Advisory Committee Notes to Fed. R. Evid. 408. "The philosophy of [Rule 408] is to allow the parties to drop their guard and to talk freely and loosely without fear that a concession made to advance negotiations will be used at trial." Steven A. Saltzburg & Kenneth R. Redden, *Federal Rules of Evidence Manual* 286 (4th ed. 1986); *see also EEOC*, 948 F.2d at 1545-46; Jack B. Weinstein & Margaret A. Berger, *supra* § 408.08[1], at 408-29 (2d ed. 2001) ("[C]are should be taken that an indiscriminate application of this 'exception' to Rule 408 does not result in undermining the rule's public policy objective."); Hjelmeset, 43 Clev. St. L. Rev. at 112. If such statements are admissible to impeach a party, the incentive to make those statements is greatly reduced and the purpose of Rule 408 is undermined.[8] *See EEOC*, 948 F. 2d at 1546; Saltzburg, *supra*. The majority opinion undermines the purposes of Rule 408.

¶32 The majority cites *DeForest v. DeForest*, 143 Ariz. 627, 694 P.2d 1241 (App. 1985), for the general proposition that "impeachment evidence derived from compromise negotiations" may be

---

[8] Obviously, a plaintiff cannot avoid filing a notice of claim pursuant to A.R.S. § 12-821.01. But, under the majority's construction, a plaintiff would be encouraged to disclose as little as possible. And, in the broader application of Rule 408, private parties would have less incentive to make full and frank statements during compromise negotiations.

admitted. In *DeForest*, the trial judge in a bench trial was called on to reconstruct a spousal maintenance agreement that had been previously approved by another judge but not set forth in a formal decree. In the process, the husband testified that he had "never been aware of [a spousal maintenance agreement in the amount suggested by the judge who had approved the agreement]." *Id*. at 633, 694 P.2d at 1247. And, the husband objected to the admission of a proposed decree, which he had signed, that included such an agreement because it was part of compromise negotiations. The trial court admitted the proposed decree for the limited purpose of showing the husband's knowledge of it, but expressly noted it would not consider it as evidence of the terms of the ultimate agreement. In that context, the court of appeals held that the trial court was not required to exclude that evidence merely because it had been presented in the course of compromise negotiations. In contrast, the evidence here was admitted in a jury trial and it did involve the actual facts of the incident, the purpose for which the trial court in *DeForest* specifically stated the evidence would not be used. The majority's decision today represents a significant expansion of the exception in *DeForest*.

¶33 Similarly, some of the other cases cited by the majority do not go so far as allowing a party's statement concerning the facts of the case to be used for impeachment. *Brocklesby v. United States*, 767 F.2d 1288, 1292-93 (9th Cir. 1985) (indemnity agreement

21

between defendants admitted to show status of parties and to impeach credibility of defendants' witnesses); *Wyatt v. Security Inn Food & Beverage, Inc.*, 819 F.2d 69, 71 (4th Cir. 1987) (upholding exclusion of settlement of two prior similar actions); *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982) (settlement evidence was properly presented to rebut defendants' assertion, in moving to set aside default, "that they had not been aware of the issues until the suit was filed"); *Ozark Auto Transp., Inc. v. Starkey*, 937 S.W.2d 175, 178 (Ark. 1997) (court could not conduct "meaningful review of the merits of . . . [Rule 408] issue" because letter not in record and abstracted portion did not contain settlement negotiations). *But see Cochenour v. Cameron Sav. and Loan, F.A.*, 160 F.3d 1187, 1190 (8th Cir. 1998) (supporting majority holding); *Davidson v. Beco Corp.*, 753 P.2d 1253, 1255 (Idaho 1987) (same); *El Paso Elec. Co. v. Real Estate Mart, Inc.*, 651 P.2d 105, 108-09 (N.M. Ct. App. 1982) (same).

¶**34**     In sum, the majority's construction will "eviscerate Rule 408." Jane Michaels, *Rule 408: A Litigation Mine Field*, 19 No. 1 Litigation 34, 37 (1992). It presents a very real danger that a jury will use the evidence substantively for a purpose prohibited by Rule 408 and it significantly undermines the policy underlying Rule 408. In addition to undermining the purpose of Rule 408, the majority's construction does not enhance the truth finding process.

22

The majority focuses on false representations and, if the majority opinion were limited to instances of clear perjury, the public policy favoring ascertainment of the truth would militate in favor of the evidence's admission. *See* Rule 102, Ariz. R. Evid. But the more likely victim of the majority's interpretation of Rule 408 is the innocent claimant, or lawyer who is mistaken as to a fact at the very early stage of the process, such as in cases requiring a notice of claim to be file within 180 days, or the defendant whose attorney has and uses information from various sources that later prove to be incorrect. Penalizing this party will not enhance the truth finding process but will impede it.

¶35      Furthermore, under the majority's construction, attorneys will likely revert to the common law practice of making hypothetical statements during compromise negotiations to avoid any future impeachment. *See* Advisory Committee Notes to Fed. R. Evid. 408. The purpose of the second sentence of Rule 408 is to eliminate this common law practice, which constituted "a preference for the sophisticated, and a trap for the unwary." Advisory Committee Notes. In the alternative, attorneys will severely limit the facts and inflate the demand put in § 12-821.01 notices or claim and response correspondence, thereby frustrating the policies underlying it. And, because attorneys are often the ones to make statements during compromise negotiations, the majority's construction creates a risk of causing the disqualification of a

23

party's attorney of choice so that he or she may be called as a witness to impeach the party or explain why a particular statement was made. *See* Hjelmeset, 43 Clev. St. L. Rev. at 110. Clearly, this would cause more harm than good to our adversarial system.

¶36 Finally, even under the majority's construction, statements made in compromise negotiations that are offered to impeach a party's testimony may still be excluded under Rule 403, Ariz. R. Evid. And I hope that trial courts will vigorously exercise their discretion to prevent admissibility of prior inconsistent statements by a party concerning the facts of the accident made in settlement negotiations. In conducting a Rule 403 analysis in this context, a trial court must "carefully balance the probative value of the evidence against the danger it will be used for an improper purpose within the context of the policies encouraging open and frank discussions during settlement negotiations and fostering the truth-finding process through the evaluation of a witness's credibility." *Schlossman & Gunkelman, Inc.*, 593 N.W.2d at 380.[9] The better practice is to exclude this type of impeachment in doubtful cases. *See id.* And, if it is

---

[9] In the present case, for example, the facts were stipulated and the statement was used in argument to attack the credibility of the plaintiff, even though the statement was made by the plaintiff's lawyer and no foundation was laid to establish whether the statement was based on information obtained from the plaintiff, or was merely attributable to error or misconduct of counsel. Even litigants with careless or unethical lawyers are entitled to a fair hearing on the true facts.

24

admitted, a trial court must, upon request, and in other cases should offer an appropriate limiting instruction to the jury. *See also* Ariz. R. Evid. 105 ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.").[10] Such instructions are, of course, of limited practical value and the better practice remains exclusion of the evidence.

¶**37** Based on the foregoing reasoning, I believe the better approach is to exclude statements made in settlement negotiations that are offered to impeach a party's testimony. In my view, such a construction of Rule 408 better serves the purposes underlying the rule. Accordingly, I would reverse the trial court's judgment.

_____
Joseph W. Howard, Judge*

CONCURRING:


_____
Stanley G. Feldman, Justice


*Pursuant to Ariz. Const. Article VI, Section 3, the Honorable

---

[10] The majority likens this case to any other in which evidence is admitted for a limited purpose. *Ante*. at ¶15 n.5. The difference is that, in cases involving statements made in compromise negotiations, the admission for the limited purpose undermines the goal of Rule 408 of allowing free and open settlement negotiations.

Joseph W. Howard, Judge of the Court of Appeals, Division Two, was designated to sit on this case.